471 So.2d 385 (1985)
Dan REIKES, M.D., Carl Hale, M.D., D.G. Kobs, Jr., M.D., and Charles E. Strauss, M.D.
v.
Laverne MARTIN and Garlon Martin, Mississippi Medicaid Commission, State of Mississippi.
No. 53915.
Supreme Court of Mississippi.
May 22, 1985.
*387 Lawrence C. Gunn, Jr., Aultman & Aultman, Hattiesburg, for appellants.
C.R. McRae, Pascagoula, Alfred Lee Felder, McComb, V. Douglas Gunter, Jackson, for appellees.
Robert A. Pritchard, Joseph Q. White, Ready & Pritchard, Pascagoula, for intervenor.
En Banc.

ON PETITION FOR REHEARING
HAWKINS, Justice, for the Court:
The appellee Mrs. Martin and her husband Garlon Martin have filed a petition for rehearing, which is denied. We are making amendments in the original opinion, however, and to avoid confusion, the original opinion is withdrawn and the following shall be the opinion of the Court in this case.
This is an appeal from the Circuit court of Forrest County, Mississippi, involving a medical malpractice claim against the appellant doctors, Honorable Jack Weldy, Circuit Judge presiding. At the conclusion of the first trial, the jury returned a verdict against the doctors for $300,000.00 in favor of Mrs. Martin and $40,000.00 in favor of Garlon Martin.
Subsequent to the above verdict, the defendant doctors filed a motion for a new trial alleging thirty-two grounds in support thereof. This motion was overruled.
The plaintiffs, Mr. and Mrs. Garlon Martin, filed a motion for a new trial claiming that the damages awarded were inadequate and requested in the alternative that the trial court enter an additur. On the plaintiffs' motion for a new trial or, in the alternative, an additur, the court ruled:
IT IS THEREFORE ORDERED AND ADJUDGED that the plaintiff, Laverne Martin, be and hereby is granted an additur of $200,000.00 and the defendants are given thirty (30) days in which to accept or reject said additur by a written notice to plaintiffs and the court. A new trial on the question of damages only is granted if the defendants, Reikes, et al, reject the additur.
The doctors declined to accept the additur and a new trial was ordered on the question of damages only. The second trial resulted in a verdict in favor of Laverne Martin alone in the amount of $543,750.00.
The doctors have perfected their appeal from the court's order granting a new trial to plaintiffs on condition of additur and from denying defendants' motion for a new trial on all issues. They have assigned nine errors seeking reversal.
The record[1] discloses that in late 1974 Mrs. Martin was referred by her family physician, Dr. Leggett, to Dr. J.P. Culpepper, III, a general surgeon in Hattiesburg, who performed a hysterectomy, i.e., the *388 removal of the uterus. Subsequent tests on the uterus revealed that Mrs. Martin was suffering from uterine cancer. Dr. Culpepper submitted the findings to a conference of doctors who recommended that Mrs. Martin undergo cobalt radiation therapy to reduce the risk of future cancer.
She was referred to the defendant doctors who were partners in a radiology group for this treatment. The treatments were rendered on an outpatient basis and consisted of twenty-three treatments over a period of thirty-one days from February 24 until March 26, 1975. The treatments were administered alternatively to the lower abdomen and the lower back.
Mrs. Martin claims that during the first week of treatments she experienced several side effects including nausea, diarrhea, and redness of the skin at the places where the radiation was administered. She also claims that the skin irritation developed into blisters within two weeks. However, no blisters were ever observed by any of the physicians, including Dr. Culpepper or her family physician, Dr. Leggett, who saw her twelve times during the period of her treatment.
After the treatments were completed, Mrs. Martin continued to see Dr. Leggett on a regular basis; yet she never reported any skin problems to him.
After all treatments were completed, most of the side effects, such as nausea, diarrhea, and redness of the skin gradually disappeared, although she testified she experienced back pain. She testified that in August of 1975 the back pain became worse and was accompanied by a rotten odor. At this time Dr. Leggett found a sore (ulcer) on the lower part of her back. (From the time the cobalt treatments were completed until August, Mrs. Martin spent a great deal of time in bed.) Treatment of the sore was unsuccessful and she was referred to Dr. Jabalay, a plastic surgeon, who removed part of the coccyx (a part of the tailbone) and a portion of the sacrum, and by plastic surgery repaired the sores.
Mrs. Martin was bedridden and unable to walk after the plastic surgery which was performed at the University Medical Center. She had developed a contracture of her right leg in the hospital and was sent to the Methodist Rehabilitation Center in an attempt to correct the problem. She remained there for approximately one month.
Thereafter, in the Fall of 1977 Mrs. Martin developed a sore in her lower abdomen and was again admitted to the University Medical Center and was successfully treated by Dr. Jabalay. Mrs. Martin contends that she is permanently disabled as a result of the defendant doctors improperly administering the cobalt radiation treatments and that her subsequent complications, i.e., sores (ulcers) and contracture of her leg resulted from the alleged improper radiation treatments.
Garlon Martin claims loss of consortium as a result of the alleged improper treatments.
The record discloses that prior to the radiation treatments Mrs. Martin suffered from severe arthritis, high blood pressure, kidney and gallbladder problems and anxiety.
The doctors contended that the sores on Mrs. Martin's back and abdomen were not caused by their treatment or any lack of care and skill on their part but were decubitus ulcers (i.e., ordinary pressure sores), which coincidentally developed several months after the treatments were administered in the area where she has received the treatments. Mrs. Martin also has sores on both sides of her hips but she does not contend that they were caused by the radiation treatments.
The appellants assign as error that the court erred in instructing the jury that the plaintiffs were not contributorily negligent, where proof in the record showed Laverne Martin had not sought follow-up treatment and had been neglectful of her own physical condition.
The plaintiffs (appellees here) requested and the court granted Instruction P-13, which states:

*389 The court instructs you that Laverne Martin and Garlon Martin are in no way negligent in this case and you cannot contribute any negligence to them.
Our statute provides that "All questions of negligence and contributory negligence shall be for the jury to determine." Miss. Code Ann. § 11-7-17 (1972).
In this case, there was conflicting evidence as to whether Laverne Martin's negligence contributed to her own injuries and damages. The doctors testified that it was their practice to always tell a patient to return in approximately two weeks for a follow-up observation and Mrs. Martin failed to do this. They also contended that Mrs. Martin did not promptly advise any of her attending physicians of the blisters and ulcers until the ulcers had reached a severe state and emitted a rotten odor. It was also the doctors' contention that Mrs. Martin's condition was aggravated by her unnecessarily remaining in bed for long periods and not properly caring for herself considering her condition.
Therefore, it was reversible error for the judge to remove this question from the jury's consideration.
Mrs. Martin asserts on her petition for rehearing she was entitled to this peremptory instruction to the jury that she was not guilty of any negligence because the doctors had not pleaded contributory negligence. Even though contributory negligence is not pled by the defendant, the issue may still be considered by the jury. See: Gilliam v. Sykes, 216 Miss. 54, 61 So.2d 672 (1953); Vaughan v. Bollis, 221 Miss. 589, 73 So.2d 160 (1954); Medley v. Carter, 234 So.2d 334 (Miss. 1970); Carr v. Cox, 255 So.2d 317 (Miss. 1971); City of Indianola, for Use of Kirkpatrick v. Love, 227 Miss. 156, 85 So.2d 812 (1956).
Under the unusual facts in this case, it was error for the trial court to remove this issue from consideration by the jury.
The appellants also assign as error that the court erred in giving several substantive jury instructions at plaintiffs' request, where such instructions omitted necessary elements of the causation and standard of care, injected issues not a part of the case for the jury's consideration, and commented upon the evidence.
The appellants first complain of Instruction P-5a:
The Court instructs the jury that if you find from a preponderance of the evidence that the defendant doctors, and/or their employees, failed to render a proper post cobalt therapy treatment to Laverne Martin by having Laverne Martin return for post therapy observations and physical examination, and if you further find that the failure to perform post therapy examination of Laverne Martin departed from the standard of care which a person such as Laverne Martin might reasonably expect from the defendant doctors in the specialty of radiology and radiation therapy, then you should find from [sic] the plaintiffs and assess damages accordingly. [Emphasis added]
Instruction P-5a was erroneous for the following reasons:
(A) The instruction fails to instruct the jury to consider whether Mrs. Martin would have returned for post-therapy observation if she had been so instructed, or that the reason she did not return was that she was not interested to do so. Also, the word "having" underscored above as it appears in the instruction should be "advised" or "instructed."
(B) The instruction refers to "... the standard of care which a person such as Laverne Martin might reasonably expect from the defendant doctors in the specialty of radiology and radiation therapy... ." This was error. It is not the standard of care which "Mrs. Martin" might expect which controls, but the objective standard of care which a physician owes his patient.
(C) Although not preserved in the record, the instruction also omits the element of proximate cause as a factor with reference to Laverne Martin's injuries.
Upon retrial these errors should not be repeated.
*390 The appellants next complain of Instruction P-21:
The Court instructs the jury that if you find from a preponderance of the evidence that the defendant doctors, or one or more of said defendant doctors, failed to keep medical records on Laverne Martin in their treatment of Laverne Martin which would allow a continuity of information between doctors and which would fully set forth pertinent information concerning the illness and treatment of Laverne Martin, and if you further find that the failure to keep medical records departed from the standard of care which a person such as Laverne Martin might reasonably expect from medical doctors in the speciality of radiology, and if you further find that such failure to keep records was negligence, and if you further find that such negligence proximately contributed or caused the injuries of Laverne Martin, then you should find for the plaintiff and assess damages as otherwise instructed.
This instruction is also erroneous. There is no evidence in the record that failure to keep records caused or contributed to Mrs. Martin's injuries. Moreover, the plaintiffs' own expert, Dr. Brown, conceded upon cross-examination that once the system of record keeping was explained to him he could find all the information necessary to treat Mrs. Martin.
This instruction also is erroneous in that it refers to the standard of care as that "... which a person such as Laverne Martin might reasonably expect from medical doctors in the specialty of radiology ..." as previously discussed in this opinion.
Upon retrial, if, from the evidence, there is a question for the jury as to whether the defendant doctor failed to keep proper records, the jury should also be instructed as to whether such failure was a contributing cause of her injuries.
The appellants next complain of Instruction P-22:
The Court instructs the jury that if you find from a preponderance of the evidence that the defendant doctors, and/or their employees, failed to stop the cobalt therapy treatment of Laverne Martin when symptoms of adverse reaction of the cobalt therapy treatment developed, such as extreme nausea or diarrhea or vomiting, or when excessive redness and or blisters appears on the treated area, and if you further find that the failure to stop treatment was negligence, and if you further find that such negligence proximately contributed or caused the injuries of Laverne Martin, then you should find for the plaintiffs and assess damages as otherwise instructed.
This instruction neither defines "adverse reactions" nor properly guides a jury as to when cobalt therapy should be discontinued. The record reflects that all of the doctors agreed that nausea, vomiting, and diarrhea as well as some redness of the skin were expected during cobalt therapy. Despite their testimony the jury was told through Instruction P-22 that if these reactions occurred, the doctors would be liable for failing to stop treatment. This was error.
The appellants finally complain of Instruction P-25, which stated that the defendant doctors could be held liable for the negligence of Mrs. Ollie Dunham, their assistant. We agree with the appellants' contention that it was improper to grant this instruction in view of the fact that the court had granted a peremptory instruction in favor of Mrs. Dunham, thereby holding that she was not negligent. However, the peremptory instruction had not been granted at the time the parties were allowed to make their objections to the proposed instructions. Once the peremptory instruction was granted, the appellants made no motion to have P-25 removed or withdrawn. Nonetheless, this instruction should not be given upon retrial.
The appellants secondly contend that the trial court should not have allowed the Medicaid Commission to participate in the actual trial. We agree.
The extent to which an intervenor may participate at trial was addressed by this *391 Court in Merchants Company v. Hutchinson, 199 So.2d 813 (Miss. 1967). In that case the Great American Insurance Company intervened to recover for workmen's compensation paid to the plaintiff. The Court, finding that it was error to allow the intervenor to participate at trial, stated:
All that was necessary for the intervenor to do was to let the court know how much had been expended by the insurance carrier, either by a petition to intervene or by a petition to join in the cause of action; thenceforth, Mississippi Law mandatorily provided for the distribution of any verdict rendered.
199 So.2d 820.
While this case was decided under the Workmen's Compensation statute, Miss. Code Ann. § 71-3-71 (1972), that section is remarkably similar to § 43-13-125, which gives the Medicaid Commission the right to intervene.
It is not our purpose to be too restrictive in the participation allowed an intervenor in a trial.
Putting the matter in perspective, however, this was a malpractice between plaintiff and four doctors. The Medicaid Commission had paid a substantial portion of her medical expenses for which it was entitled to be repaid under any recovery from the doctors, and a right to intervene in the suit, all authorized by statute.
Yet the amount paid by the Medicaid Commission was simply an account, the accuracy of which was never contested by the defendants. Indeed, defense counsel offered to stipulate the amount due the Commission in event of recovery. Nevertheless, the Commission was permitted to take up the jury's time in presenting detailed evidence of the account, not disputed. Plaintiff's counsel cross-examined an employee of the Commission as to diagnoses on the records. The Medicaid Commission witness testified from the account as to medicinal purposes of the drugs. Thus, the plaintiffs used a simple statement of account to "bootstrap" their own proof.
The authenticity and accuracy of the account not being in dispute, there were proper ways for interpreting the nature and uses of the drugs, the diagnoses and treatment of Mrs. Martin, clearly available to the plaintiffs. The testimony of the Medicaid Commission witness was unnecessary and improper in this case, and also incompetent. The circuit judge abused his discretion in allowing this evidence, which was prejudicial.
It is not the intention of this court to restrict the broad discretion of a trial court as to the manner in which an intervenor will be allowed to participate in a cause. An intervenor must be permitted to do all that is necessary to protect his interest. He should not be permitted to do more to the prejudice of any party. The rights of all parties should be preserved. There may be occasions when the intervenor's case should be tried separately and apart from the other issues.
We leave the precise manner and extent an intervenor shall be permitted to participate in the discretion of trial judges, based upon each case. Under the facts of this case the manner in which the Medicaid Commission put on its proof and the cross-examination of its witness by the plaintiff's counsel was prejudicial.[2]
The appellants further contend that the court erred in instructing the jury that the defendants could be found liable for failing to fully inform Laverne Martin of the risk of cobalt therapy, where no evidence in the record showed she would have elected not to undergo the therapy had she been so informed.
*392 Mrs. Martin claims that the defendant doctors breached a duty owed to her under the doctrine of informed consent by failing to advise her of the risk of cobalt radiation therapy. This Court recognized the doctrine of informed consent in Ross v. Hodges, 234 So.2d 905 (Miss. 1970), holding that:
[A] physician is under a duty under some circumstance to warn his patient of the known risks of proposed treatment or surgery, so that the patient will be in a position to make an intelligent decision as to whether he will submit to such treatment or surgery. Shetter v. Rochelle, 2 Ariz. App. 358, 409 P.2d 74 (1965), modified and rehearing denied, 2 Ariz. App. 607, 411 P.2d 45 (1966); Grosjean v. Spencer, 258 Iowa 685, 140 N.W.2d 139 (1966).
234 So.2d 908.
At trial, the jury was given Instruction P-4 on the issue of consent:
The court instructs the jury that a physician must obtain consent from a patient to perform the procedure or treatment performed on the patient. To obtain the required consent, the physician must explain the procedure to the patient and warn the patient of all material risks or dangers in the procedure or treatment. The purpose of the explanation is to enable the patient such as Laverne Martin to make an intelligent and informed choice about whether to undergo the treatment or procedure, in this case, cobalt therapy. The physician is negligent if he fails to disclose to the patient such as Laverne Martin all material information, risks and warnings.
A risk or danger is material if it would be important to a reasonable person in the patient's position in making the decision whether or not to undergo the procedure or treatment, in this case, cobalt therapy.
The physician is not required to disclose all possible information. The physician need only disclose information for a reasonable person to make an intelligent decision.
Although not referred to by name, this instruction applied the so-called prudent patient or materiality of the risk standard in determining what risks must be revealed to the patient. Under this standard a physician must disclose those known risks which would be material to a prudent patient in determining whether or not to undergo the suggested treatment.[3]
The appellants contend that the above jury instruction was erroneous as it allowed recovery upon proof that informed consent was not given and without any showing of causation, i.e., that Mrs. Martin would not have elected to undergo the treatment if she had been informed of the known risks.
To recover under the doctrine of informed consent, as in all negligence cases, there must be a causal connection between the breach of duty by the defendant and the injuries suffered by the plaintiff. Some states have adopted a subjective standard, requiring the plaintiff to testify or otherwise prove that she would not have consented to the proposed treatment if she had been fully informed. See, e.g., Scott v. Bradford, 606 P.2d 554 (Okla. 1979); Wilkinson v. Vesey, 110 R.I. 606, 295 A.2d 676 (1972). A second test, and the one used by the vast majority of the states, is based upon an objective standard. Under this test the question becomes whether or not a reasonably prudent patient, fully advised of the material known risks, would have consented to the suggested treatment.
The problem with the subjective test was pointed out by the California Supreme Court in the case of Cobbs v. Grant, 8 Cal.3d 229, 104 Cal. Rptr. 505, 502 P.2d 1 (1972), wherein it is stated:
"Since at the time of trial the uncommunicated hazard has materialized, it would be surprising if the patient-plaintiff *393 did not claim that had he been informed of the dangers he would have declined treatment. Subjectively he may believe so with the 20-20 vision of hindsight, but we doubt that justice will be served by placing the physician in jeopardy of the patient's bitterness and disillusionment."
104 Cal. Rptr. 516-517, 502 P.2d 11-12.
Based upon this reasoning, we think an objective test is the more desirable and adopt that test as the one to be applied in this State.
Instruction P-4 is entirely in the abstract. The jury should be told specifically the risks the doctors were required to disclose to Mrs. Martin.
Appellants also assign as error that a British doctor who moved to America in 1977, who has failed the American licensing test on three occasions, who must return to medical school in order to qualify for a medical license, and who knows nothing of how medicine is practiced outside one charity hospital in New Orleans, is not competent to testify to the appropriate standard of care to be employed by a doctor in Hattiesburg in 1975.
The record reflects that Dr. John Reid Brown, the plaintiff's radiology expert, moved from Great Britain to the United States in December of 1977. In an attempt to obtain a license to practice medicine, he took the Flex Test[4] on three occasions and failed each time. Before he is eligible to take the test a fourth time, he will have to return to medical school for additional training.
In 1979 the State of Louisiana granted Dr. Brown an institutional license, which restricts his practice to Louisiana charity hospitals. He is currently employed as an assistant professor at Louisiana State University Medical School. He also serves as acting director of therapeutic radiology at L.S.U.'s charity hospital.
The appellants contend that Dr. Brown was not qualified to testify as to the standard of care exercised by physicians in Hattiesburg, Mississippi, since he had never practiced in Mississippi and had no knowledge of the practice of medicine in this State.
The alleged negligent treatment of Mrs. Martin occurred in 1975, some two years before Dr. Brown moved to the United States and four years before he obtained his institutional license. When asked about the standard of care in 1975 in Hattiesburg, Dr. Brown testified as follows:
Q. Okay. How about the way medicine was practiced in Mississippi, in Hattiesburg, Mississippi, in 1975?
A. I didn't ask specifically at that stage because I didn't think it was right to discuss the case or details of that situation with colleagues.
* * * * * *
Q. Okay, now, particularly up to 1975, were you aware of the type treatment that was being given in America at that time?
A. Yes, we did get the America Journals, and of course, there are several textbooks which are well known in American that were in our libraries.
In our original opinion we only addressed whether Dr. Brown qualified as a witness under our "locality rule," which was then the law.
Since this case is being reversed, and also in view of our recent decision in Hall v. Hilbun, 466 So.2d 856 (1985), we hold that Dr. Brown's testimony cannot be excluded simply because he was not familiar with the practice of medicine in the locality of Hattiesburg. Upon retrial, as to this aspect of his competency as an expert witness, the circuit judge will be governed by the criteria we set forth in Hall v. Hilbun, supra.
Dr. Brown's competency as an expert, in any event, will be for the determination of the circuit judge upon retrial.

*394 ADMISSION OF NEGLIGENCE BY DEFENDANTS
In her petition for rehearing Mrs. Martin contends there was ample evidence in the record to support a jury verdict aside from the expert testimony of plaintiff's witness, Dr. John Reid Brown.
There was no occasion to address this specific issue in our original opinion, nor is there any reason to do so at this time.

GARLON MARTIN'S CONTENTION
Plaintiff Garlon Martin complains that our original opinion fails to note any disposition of his separate cause of action for loss of consortium.
Because this case is being reversed and remanded as to Mrs. Martin, it follows his cause is likewise reversed and remanded. Palmer v. Clarksdale Hospital, 213 Miss. 611, 57 So.2d 476 (1952), cited by Martin has no applicability to this case because Mr. and Mrs. Martin chose to file a joint declaration as to each of their causes of action, their causes were tried together, and verdicts and final judgment was rendered in each. A new trial on damages alone was granted Mrs. Martin, and there was no necessity for the defendants to perfect an appeal in Mr. Martin's cause until final judgment was rendered in Mrs. Martin's cause. See: American Empire Life Insurance Co. v. Skill-Craft Builders, Inc., et al., 291 So.2d 735 (Miss. 1974).
For the reasons stated above, the judgment of the lower court in favor of Laverne Martin and Garlon Martin against Dan Reikes, M.D., Carl Hale, M.D., D.G. Kobs, Jr., M.D., and Charles E. Strauss, M.D., is reversed and this cause remanded to the Circuit Court of Forrest County for a new trial.
REVERSED AND REMANDED FOR A NEW TRIAL.
PATTERSON, C.J., ROY NOBLE LEE, P.J., and PRATHER and ANDERSON, JJ., concur.
WALKER, P.J., concurs in part and dissents in part.
ROBERTSON, J., specially concurs.
DAN M. LEE, J., joins in the specially concurring opinion of Justice Robertson in the case of Laverne Martin v. Dan Reikes, et al., dissents as to the reversal of Garlon Martin v. Reikes, et al.
SULLIVAN, J., not participating.
WALKER, Presiding Justice, concurring in part and dissenting in part:
I readily concur in that part of the opinion which reverses this case and remands it for a new trial because of numerous errors committed during the trial in the court below.
I respectfully dissent from that portion of the opinion which permits the new trial to be governed by the new rules of law with respect to the standard of care required of physicians pronounced by this Court in Hall v. Hilbun, 466 So.2d 856, 1985, and the qualifying of expert witnesses under that rule.
In my opinion, it is basically unfair to impose a new standard of care, after the fact, on the doctors in this case. The new standard is much stricter than the standard of care that the medical profession has heretofore practiced under in this State. King v. Murphy, 424 So.2d 547 (Miss. 1982); Dean v. Conn, 419 So.2d 148 (Miss. 1982); Dazet v. Bass, 254 So.2d 183 (Miss. 1971); Hill v. Stewart, 209 So.2d 809 (1968); Delaughter v. Womack, 250 Miss. 190, 164 So.2d 762 (1964); Copeland v. Robertson, 236 Miss. 95, 112 So.2d 236, 241 (1959); Sanders v. Smith, 200 Miss. 551, 27 So.2d 889 (1946).
The "national standard of care" adopted in Hall v. Hilbun, supra, should, out of fairness to the medical profession, only have application to those incidents of negligence occurring after Hall v. Hilbun was handed down by this Court. It is patently unfair to give the new standard of care retroactive application.
ROBERTSON, Justice, specially concurring:
I write separately because I believe the majority opinion sends out misleading if *395 not down right erroneous signals regarding the meaning of Rule 24 of the Mississippi Rules of Civil Procedure. I refer here to that portion of the opinion for the majority which holds that the Mississippi Medicaid Commission as an intervening plaintiff was erroneously allowed to participate in the trial.
Without any doubt whatsoever, if Rule 24 had been in effect at the time this action was commenced, there would be no error in the trial judge's action in allowing the Mississippi Medicaid Commission to participate fully in the trial below. The Medicaid Commission was an intervenor as of right within the meaning of Rule 24(a)(1). Once an intervening plaintiff is in the case under Rule 24(a)(1) or otherwise, that intervenor must be afforded the opportunity to prove its claim. To that end the intervenor once in the case has the right to participate at trial as fully as if that party had been the only plaintiff in the case. Marcaida v. Rascoe, 569 F.2d 828, 831 (5th Cir.1978); Park & Tilford, Inc. v. Schulte, 160 F.2d 984, 989 fn. 1 (2d Cir.1947); In Re Raabe, Glissman & Co., 71 F. Supp. 678, 680 (S.D.N.Y. 1947). This means that the intervening plaintiff has the right to proceed to make his or its proof in any manner permissible under the rules of evidence. That some other party in the case, even the original plaintiff, may feel inconvenienced is a factor I regard as wholly irrelevant. I regard that there is no authority in Rule 24 for a restriction of the manner of proof of an intervening plaintiff as the majority seems to find.
Where an intervening plaintiff's case will substantially prejudice another party already in the case, the remedy is not to be found in any discretion of the trial judge to limit or control the intervenor in the presentation of its proof. Rather, under such circumstances the trial judge's discretion is that provided under Rule 42(b), Miss.R. Civ.P., to order served the trial of those issues involving the intervenor which will result in inordinate prejudice to someone else.
This is a pre-Rules case. This action was commenced prior to January 1, 1982, the effective date of the Mississippi Rules of Civil Procedure. Accordingly, Rule 24 has no application per se. I reluctantly concur in the result reached by the majority on the intervention issue (a) because this case seems to be controlled by Merchants Company v. Hutchinson, 199 So.2d 813 (Miss. 1967), a decision which I regard as most unfortunate and (b) because, with the advent of the Mississippi Rules of Civil Procedure, the rule of Merchants and, indeed, the rule of this case and all other pre-Rules cases will quite appropriately be relegated to the junk heap.
NOTES
[1] The transcript in this case is 50 volumes, which contain 6,958 pages.
[2] We note Rule 24(a) Miss.R.Civ.P. addresses the unconditional right to intervene when authorized by statute, but does not address the manner or degree of participation of all the parties after an intervenor exercises this right. Such manner or degree of participation must be left to a rather broad discretion of the trial judge, whose responsibility it is to see that each party is afforded the opportunity to assert and protect his own interest in an orderly, fair proceeding. This much, no more.
[3] "Known risks" are those which would be known to a careful, skillful, diligent and prudent practitioner or specialist, in this case a therapeutic radiologist, practicing in Hattiesburg, Mississippi, in 1975. See Copeland v. Robertson, 236 Miss. 95, 112 So.2d 236 (1959).
[4] Federation Licensing Examination.