United States Court of Appeals,

Fifth Circuit.

No. 96-60484.

John M. GOLDMAN, Jr., a Minor, by & through his Mother and Next Friend, Deborah Goldman;  Deborah Goldman, Individually;  John M. Goldman, Sr., Plaintiffs-Appellants,

v.

Julius BOSCO, M.D., George Henneberger, M.D.;  Women's Clinic, Inc., Defendants-Appellees.

Aug. 27, 1997.

Appeal from the United States District Court for the Southern District of Mississippi.

Before WISDOM, BENAVIDES and STEWART, Circuit Judges.

WISDOM, Circuit Judge:

This appeal involves a medical malpractice action brought under Mississippi law.  Because we find that the district court erroneously instructed the jury regarding the standard of care applicable to the defendant physician's conduct, we reverse and remand.

*BACKGROUND*

On November 7, 1989, the plaintiffs, John M. Goldman, Jr., a minor, by and through his mother and next friend, Deborah Goldman, Deborah Goldman individually, and John M. Goldman, Sr., filed this medical malpractice action against Julius Bosco, M.D., George Henneberger, M.D., the Women's Clinic, Inc., and the Singing River Hospital and its Board of Trustees.  Jurisdiction was based on diversity of citizenship.  The plaintiffs allege that the defendants were negligent during Deborah Goldman's delivery of John

1

Goldman Jr. on November 4, 1975, causing irreversible brain damage to the newborn child. The district court dismissed the claims against the Singing River Hospital and its Board of Trustees. The case proceeded to trial, and the jury returned a verdict for the remaining defendants, finding specifically that neither Bosco, Henneberger, nor the Women's Clinic was negligent in the care of Deborah Goldman or John Goldman, Jr.

The plaintiffs moved for a new trial, arguing that the district court erroneously instructed the jury regarding the applicable standard of care, asserting that the district court abused its discretion in making certain evidentiary rulings, and urging the court for a new trial because of an improper comment by defense counsel. The district court denied the motion. The plaintiffs filed a timely notice of appeal.

*DISCUSSION*

The most significant issue in this appeal is whether, under Mississippi law, a national standard of care or local standard of care should be applied to the defendant physicians' 1975 conduct. Initially, the district court, ruling on a motion *in limine,* determined that a national standard of care applied. Later, the district court reconsidered the issue and decided to apply the local standard of care.

Because we sit in diversity, we must apply Mississippi law.[1] Generally, we review the district court's ruling on a motion for

---

[1]*See, Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

2

new trial for an abuse of discretion,[2] but asserted legal errors are reviewed *de novo*.[3]

At trial, the district court instructed the jury to apply a local standard of care to the defendant physicians' conduct:

> In this case, when determining whether the plaintiffs have demonstrated by a preponderance of the evidence that [the defendants] were negligent ... you must determine whether the degree of care and skill exercised by [the defendants] fell below the level of care and skill which would have been exercised by a minimally competent, reasonably prudent obstetrician under the same or similar circumstances *practicing in the Pascagoula, Mississippi, medical community in 1975.*

The plaintiff argues that the district court erred as a matter of law because under Mississippi law a national standard of care should have been applied to the defendant physicians' conduct. In 1985, in *Hall v. Hilbun*,[4] the Mississippi Supreme Court abandoned the local standard of care and adopted a resource-based national standard of care, which is as follows:

> [T]he physician's non-delegable duty of care is this: given the circumstances of each patient, each physician has a duty to use his or her knowledge and therewith treat through maximum reasonable medical recovery, each patient, with such reasonable diligence, skill, competence, and prudence as are practiced by minimally competent physicians in the same specialty or general field of practice *throughout the United States, who have available to them the same general facilities, services, equipment, and options.*[5]

---

[2]*See, e.g., Marcel v. Placid Oil Co.,* 11 F.3d 563, 568 (5th Cir.1994).

[3]*Munn v. Algee,* 924 F.2d 568, 575 (5th Cir.1991); *Dixon v. International Harvester Co.,* 754 F.2d 573, 586 (5th Cir.1985); 1 STEVEN ALAN CHILDRESS & MARTHA S. DAVIS, FEDERAL STANDARDS OF REVIEW § 5.08, at 5-73 (2nd ed.1992).

[4]466 So.2d 856 (Miss.1985).

[5]*Id.* at 873.

The *Hall* decision adopted both a new standard of care for physicians and a new evidentiary rule regarding who may qualify as an expert witness. *Hall* makes clear that a medical expert may be qualified without knowledge of the particular community, as long as the expert is familiar with the facilities, resources, services and options available.[6]

The court then addressed whether its decision would apply retroactively. The court recognized the general rule that "judicial decisions ordinarily apply retroactively",[7] and noted that other states had abolished locality rule by simply adopting the national standard of care and applying it retroactively "in a normal fashion without fanfare".[8] The *Hall* court, however, carefully considered the retroactivity issue.

> The retroactivity question with regard to the evidentiary rule—who may qualify as an expert witness—is easy.... [The evidentiary rule] should be applied in the trial of this case on remand[,] ... in any case in which an appeal is pending[,] ... [and] to all cases tried after this date.

> The retroactivity *vel non* of the rule regarding the physician's duty of care is arguably more difficult. Injustice would necessarily attend our passing judgment on the conduct of a citizen by reference to substantive rules substantially different from those in effect and relied upon by the citizen at the time of his conduct. We recognize that "the confidence of people in their ability to predict the legal consequences of their actions is vitally necessary to facilitate the planning of primary activity".

> These fundamental premises have more validity in contracts, property or other business or economic contexts than in tort cases. Still if it could be demonstrated that at

---

[6]*Id.* at 874-75.

[7]*Id.* at 876.

[8]*Id.*

the time Dr. Hilbun prescribed post-operative care for Mrs. Hall he acted in reliance upon the validity of standards substantially more favorable to him than those we state today, that would weigh heavily in support of non-retroactivity. We do not perceive this to be the case.

What we say today with regard to the standard of care amounts to little more than the law catching up with the way physicians have practiced their profession for years. Moreover today's decision was "clearly foreshadowed"[9] by the dictum in *Dazet v. Bass,* and by *King v. Murphy.*[10] We today do little more than fulfill the prophecy of *Dazet* and smooth some of *King's* rough edges. Seen in this context, retroactivity works no unfairness.[11]

Thus, the 1985 *Hall* decision retroactively applied the resourced-based national standard of care to 1978 conduct. The *Hall* court found that *Dazet v. Bass,*[12] a 1971 decision, "clearly foreshadowed" the eventual adoption of the national standard of care, thus mitigating any unfairness to the defendant physicians.

In *Dazet* the plaintiff attacked the locality rule.

Plaintiff contends with a great deal of force that the so-called "locality rule" is no longer valid for the reason that physicians now attend the same colleges, receive the same post graduate courses in their specialties, and go to the same

---

[9]The *Hall* court looked to the Supreme Court's retroactivity analysis in *Chevron Oil v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). In *Chevron,* the Court held that, as a threshold matter, "the decision to be applied nonretroactively must establish a new principle of law ... by deciding an issue of first impression whose resolution was not clearly foreshadowed". The *Hall* court gleaned from *Chevron* that such "foreshadowing removes [the] potential for injustice". *Hall,* 466 So.2d at 877.

[10]424 So.2d 547 (Miss.1983). *King* extended and expanded the locality rule. The Mississippi Supreme Court considered *King* "clear foreshadowing" of the *Hall* decision, removing the potential for injustice to the defendant physician in *Hall,* even though *King* was published years after the physician's conduct that was at issue in *Hall.*

[11]*Id.* at 877 (citations and quotations omitted).

[12]254 So.2d 183 (Miss.1971).

5

seminars; that the standards of care for a specialist should be and are the same throughout the country, and that geographical conditions or circumstances are no longer valid as controlling the standards of a specialist's care or competence.[13]

Although the court rejected the plaintiff's argument on procedural grounds, the court noted that the point had "considerable force".[14]

In another 1985 case, *Reikes v. Martin,*[15] the Mississippi Supreme Court applied *Hall.* In *Reikes,* the court found numerous errors occurred during trial and remanded the case. The court instructed:

> [I]n view of our recent decision in *Hall v. Hilbun,* we hold that [the expert's] testimony cannot be excluded simply because he was not familiar with the practice of medicine in the locality of Hattiesburg. Upon retrial, as to this aspect of his competency as an expert witness, the circuit judge will be governed by the criteria we set forth in *Hall v. Hilbun.*[16]

*Reikes* is significant here. The conduct at issue in *Reikes* occurred *in 1975.* The majority opinion clearly requires that the trial court apply the evidentiary rule propounded in *Hall.* The majority does not expressly state that the national standard of care applies retroactively to the same conduct, but the evidentiary rule and the standard of care seem inextricable. According to the majority, the trial court could not require that the expert witness be "familiar with the practice of medicine in the locality of

---

[13]*Id.* at 187.

[14]*Id.*

[15]471 So.2d 385 (Miss.1985) (citations omitted).

[16]*Id.* at 393.

6

Hattiesburg".  If the expert is not familiar with the locality, then he could testify only as to the resource-based national standard.[17]

This line of precedent supports the plaintiff's contention that the resource-based national standard adopted in *Hall* should have been applied to the defendant physicians' 1975 conduct.  The district court, in reversing its decision to apply the national standard, relied on *Presley v. Mississippi State Highway Comm'n.*[18]  This reliance is misplaced.

In *Presley,* the Mississippi Supreme Court found portions of the Mississippi Sovereign Immunity Act, Miss.Code Ann. § 11-46-1 *et seq,* unconstitutional and considered whether to strip the state of immunity retroactively.  The court observed that "[t]o hold now that no immunity has existed since 1984 poses fiscally disastrous consequences to our state and its political subdivisions",[19] and that "our decision today has not been "clearly foreshadowed' ".[20]  The court also addressed the special nature of the retroactivity issue presented in *Presley.*

> [W]e do not here deal with tortfeasors in the ordinary

---

[17]Apparently Justice Walker, too, felt that the majority called for the retroactive application of the national standard.  Justice Walker "dissent[ed] from that portion of the opinion which permits the new trial to be governed by the new rules of law with respect to the standard of care required of physicians pronounced by [the Mississippi Supreme Court] in *Hall v. Hilbun* ".  R*eikes,* 471 So.2d 385, 394 (Miss.1985) (Walker J., dissenting)

[18]608 So.2d 1288 (Miss.1992).

[19]*Id.* at 1298.

[20]*Id.* at 1300.

7

sense.  That is, we do not deal with human beings guilty of careless or intentional wrong.  There is no immunity accorded the active wrongdoer by the [Mississippi Sovereign Immunity Act].  What we treat here is the question whether the taxpayers stand exposed to liability for such wrongs.[21]

As the *Presley* court pointed out, the retroactivity issue presented in that case differs greatly from the retroactivity issue presented here.  The instant case deals with the actions of "tortfeasors in the ordinary sense" not actions that could affect the state treasury.

The district court bolstered its decision to apply the local standard of care by relying on certain language in the *Hall* decision.  The Hall court stated that "if it could be demonstrated that at the time Dr. Hilbun prescribed post-operative care for Mrs. Hall he acted in reliance upon the validity of standards substantially more favorable to him than those we state today, that would weigh heavily in support of non-retroactivity".  The district court then determined that the defendant physicians in this case relied on local standards "substantially more favorable" to them than the resource-based national standard.  The problem with the district court's approach is that the *Hall* court itself broadly rejected the possibility that the defendant physician in that case had justifiably relied on a more favorable distinct "local" standard of care;  "[w]hat we say today with regard to the standard of care amounts to little more than the law catching up with the way physicians have practiced their profession for years".[22]  As

---

[21]*Id.* at 1299.

[22]*Hall,* 466 So.2d at 877.

8

pointed out by the court in *Hall,* the historical justification for such "local" standards was seriously questioned by the court as early as 1971 in *Dazet.*[23]

The *Hall* court carefully considered the retroactivity issue in the context of medical malpractice and decided that applying the resource-based national standard of care to the defendant physician's 1978 conduct was merely a recognition "of the way physicians have practiced their profession for years".  There is no indication in the *Hall* decision, or any subsequent case, that the Mississippi Supreme Court would hesitate to apply *Hall* to conduct occurring just three years earlier.  In fact, in *Reikes* the court did just that.  In the light of all of the above, the district court should have followed *Hall* and instructed the jury as to the resource-based national standard of care.

We have considered the other issues raised by the plaintiff and find them without merit.

Accordingly, we REVERSE the district court's ruling denying plaintiff's motion for new trial and REMAND this case for a new trial consistent with this opinion.

---

[23]*See Id.* at 870.

9