# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-SA-00765-COA

**MISSISSIPPI DIVISION OF MEDICAID**                                    **APPELLANT**

v.

**MELISSA PITTMAN, AS NEXT FRIEND AND**                          **APPELLEE**
**NATURAL GUARDIAN OF JAVAS PITTMAN, A**
**MINOR**

| | |
|---|---|
| DATE OF JUDGMENT: | 05/20/2014 |
| TRIAL JUDGE: | HON. H. DAVID CLARK II |
| COURT FROM WHICH APPEALED: | JASPER COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | J. NICHOLAS CRAWFORD |
| | FRANCIS DRAPER INGRAM |
| ATTORNEYS FOR APPELLEE: | EUGENE COURSEY TULLOS |
| | JOHN RAYMOND TULLOS |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| TRIAL COURT DISPOSITION: | DENIED MEDICAID'S SUBROGATION CLAIM |
| DISPOSITION: | REVERSED AND REMANDED - 6/30/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., ROBERTS AND MAXWELL, JJ.**

**MAXWELL, J., FOR THE COURT:**

¶1.     When approving a minor's settlement, the chancellor here denied the subrogation

rights of the Mississippi Division of Medicaid (Medicaid), citing the "made whole" rule. But

the made-whole rule only applies to an insurer's *contractual* right to subrogation.[1]

Medicaid's right to subrogation is not contractual. It is statutory.[2] And the made-whole rule

---

[1] *Hare v. State*, 733 So. 2d 277, 284 (¶27) (Miss. 1999).

[2] Miss. Code Ann. § 43-13-125 (Rev. 2009).

does not apply to statutory subrogation rights.[3]

¶2.    The chancellor, despite his equitable powers, could not disregard the clear statutory directive that Medicaid recover its $10,308.40 interest from the $25,000 third-party payment to the minor.[4]    Thus, we reverse the chancellor's order denying Medicaid's statutory subrogation right as a condition of the settlement approval.  We remand this case back to the chancery court for further proceedings consistent with this opinion.

## Facts and Procedural History

¶3.    Javas Pittman, a minor, was riding on the hood of a car when it crashed.  Javas was seriously injured.  He was airlifted to University of Mississippi Medical Center, where he underwent surgery.  Months later, he had another surgery.  By the time he reached maximum medical recovery, Javas's medical bills totaled more than $170,000. Javas's providers billed Medicaid for $66,699.19 of those expenses.   And Medicaid reimbursed the providers $10,308.04.

¶4.    The driver of car was not insured.  So Javas's mother, Melissa Pittman, made a claim under her automotive policy, which included $25,000 in uninsured-motorist coverage. Melissa's carrier, Progressive Gulf Insurance Company (Progressive), agreed to settle for full policy limits.  So Melissa initiated a guardianship proceeding, requesting the Jasper County Chancery Court authorize her to accept Javas's settlement. *See* Miss. Code Ann. § 93-13-59

---

[3] *Federated Mut. Ins. v. McNeal*, 943 So. 2d 658, 661 (¶¶13-14) (Miss. 2006).

[4] *See id.* at (¶13).

2

(Rev. 2013).

¶5.    Medicaid appeared in the guardianship and asserted a $10,308.04 lien against the settlement proceeds.  The chancellor required Melissa to also notify two other potential lien holders: American Medical Response (AMR), which had billed Javas $1,225 for air transport, and Mississippi Children's Health Insurance Program (CHIPS), which had covered $42,228.18 of Javas's medical expenses.  Neither AMR nor CHIPS ever appeared in the matter and were deemed to have waived any lien or right to subrogation they may otherwise have held.  But Medicaid was vigilant to put forth its statutory right to recover $10,308.04 from the $25,000 settlement with Progressive.  *See* Miss. Code Ann. § 43-13-125 (Rev. 2009).

¶6.    Progressive also appeared in the matter, informing the chancellor that Medicaid's statutory subrogation rights authorized Medicaid to go after Progressive directly.  *See* Miss. Code Ann. § 43-13-125(4).  Progressive voiced its concern that, were the court to deny Medicaid its $10,308.40 portion of the settlement, Progressive may be still be liable to Medicaid for that amount.

¶7.    When a Medicaid recipient, like Javas, recovers any amount from a third-party for his injuries, section 43-13-125(2) directs the amount recovered to be applied, first, to attorney's fees, second, to the amount of Medicaid's interest on behalf of the recipient, and, finally, if

3

there is "[a]ny excess," to the recipient.[5]  While the chancellor here approved paying Javas's attorney $8,640.89 in legal fees and expenses, he refused to apply any portion of the settlement toward Medicaid's $10,308.04 claim.  The chancellor deemed the approximately $6,000 excess as too negligible and not in Javas's best interest.

¶8.     Citing cases where the Mississippi Supreme Court has applied the made-whole rule to deny an insurer's contractual right to subrogation, the chancellor found that, because Javas would not have been made whole by the settlement given the extent of his injuries, Medicaid would not be allowed to assert its subrogation right over the settlement proceeds.  *See Mem'l Hosp. at Gulfport v. Proulx ex rel. Proulx*, 121 So. 3d 222, 224 (¶6) (Miss. 2013); *Hare v. State*, 733 So. 2d 277, 284 (¶26) (Miss. 1999).  In his final order, the chancellor authorized Melissa to accept the $25,000 setttlement on Javas's behalf "conditioned upon cancellation of the subrogation claims of CHIPS, AMR[,] and the Mississippi Division of Medicaid."

¶9.     Medicaid timely appealed.  On appeal, the critical inquiry is a question of law—Does the equitable made-whole doctrine apply to Medicaid's statutory right to subrogation?  We review questions of law de novo.  *In re Guardianship of Duckett*, 991 So. 2d 1165, 1173 (¶15) (Miss. 2008).

## Discussion

---

[5] Medicaid's right to subrogation against Progressive's proposed settlement arose before the most recent amendments to section 43-13-125. *See* Miss. Code Ann. § 43-13-125 (Supp. 2014) (amended by 2014 Miss. Laws Ch. 488 (H.B. 1275), effective July 1, 2014). This opinion refers to the pre-amended version. *See* Miss. Code Ann. § 43-13-125 (Rev. 2009).

¶10. Despite his good intentions, the chancellor erred when he disallowed Medicaid's claim based on the equitable made-whole doctrine. Medicaid's subrogation right exists by virtue of statute. So whether Medicaid could assert its right was strictly a matter of statute, which could not be disregarded simply because its effect seemed unfair. Because the chancellor's order contained the express condition that Melissa not reimburse Medicaid from Javas's settlement—a clear violation of section 43-13-125—that order must be reversed.

### I. Made-Whole Rule

¶11. The chancellor relied on *Hare* and its application of the made-whole rule to disallow Medicaid's subrogation claim. *See Hare*, 733 So. 2d at 284 (¶27). But *Hare* dealt specifically with a *contractual* right to subrogation placed in the insurance policy by the insurance company. *Id.*

¶12. The made-whole rule "is the general principle that an insurer is not entitled to equitable subrogation until the insured has been fully compensated." *Id.* at 281 (¶14). In *Hare*, the supreme court "adopt[ed] the 'made whole' rule and [held] that it is not to be overridden *by contract language*[.]" *Id.* at 284 (¶27) (emphasis added). The supreme court found this to be particularly true of the insurance policy in *Hare*, because the insurer had expressly stated the intent of its subrogation clause was "to eliminate double payments of [the insured's] medical expenses." *Id.* at 280 (¶11).

¶13. The supreme court concluded its analysis in *Hare* by observing that to otherwise "allow the literal language of an insurance contract to destroy an insured's equitable right to

5

subrogation ignores the fact that this type of contract is realistically a unilateral contract of insurance and overlooks the insured's total lack of bargaining power in negotiating the terms of these types of agreements." *Id.* at 284 (¶27).

## II. Medicaid's Statutory Right to Subrogation

¶14. Unlike *Hare*, here there are no "issues of unilateral contracts and bargaining power in negotiations." *Miss. Ins. Guar. Ass'n v. Brewer,* 922 So. 2d 807, 812 (¶23) (Miss. Ct. App. 2005). Instead, we are faced with a statute creating a clear right to reimbursement. Miss. Code Ann. § 43-13-125.[6] And according to the supreme court, when the "right of reimbursement 'exists by virtue of statute,'" the equitable made-whole rule does not apply. *Federated Mut. Ins. v. McNeal*, 943 So. 2d 658, 661 (¶¶13-14) (Miss. 2006) (quoting *Miss. Food & Fuel Workers' Comp. Trust v. Tackett*, 778 So. 2d 136, 143 (¶27) (Miss. Ct. App. 2000)). Instead, the existence of this right "must rise or fall strictly as a matter of statutory interpretation." *Id.* at (¶13).

¶15. Melissa argues *McNeal*'s holding is narrow and only applies to the specific

---

[6] Under section 43-13-125(1):

> If Medicaid is provided to a recipient under this article for injuries, disease or sickness caused under circumstances creating a cause of action in favor of the recipient against any person, firm or corporation, then *the division shall be entitled* to recover the proceeds that may result from the exercise of any rights of recovery that the recipient may have against any such person, firm or corporation to the extent of the Division of Medicaid's interest on behalf of the recipient.

(Emphasis added).

6

subrogation statute addressed in that case, Mississippi Code Annotated section 71-3-71 (Rev. 2011), which is part of the workers' compensation act. But what distinguished the subrogation rights in *McNeal* from the rights in *Hare* was not workers' compensation. Rather, the key distinction in *McNeal* was the fact the insurer's subrogation rights "do not spring from a contractual agreement as in *Hare*, but rather are conferred by [s]ection 71-3-71." *McNeal*, 943 So. 2d at 661 (¶13); *see also Brewer*, 922 So. 2d at 812 (¶23) (distinguishing legislatively established subrogation rights from the contractual rights subject to the made-whole rule in *Hare*). In other words, it was the *source* of the subrogation right—statute versus contract—that made the equitable made-whole doctrine inapplicable. *McNeal*, 943 So. 2d at 661 (¶¶13-14); *see also Proulx*, 121 So. 3d at 223-24 n.1 (acknowledging Medicaid's statutory right to impose a lien on a settlement that did not make the injured party whole).

¶16. Here, Medicaid's right to reimbursement did "not spring from a contractual agreement" but rather was conferred by section 43-13-125. *McNeal*, 943 So. 2d at 661 (¶13). Thus, the chancellor "erred when [he] applied the equitable made-whole doctrine to [this] statutory right[.]" *Id.* Like section 71-3-71,[7] section 43-13-125(2) "unambiguously provides the method for distributing proceeds when, as here, an injured [Medicaid recipient] recovers from a third party." *McNeal*, 943 So. 2d at 661 (¶14). So like section 71-3-71, the clear

---

[7] In *Reikes v. Martin*, 471 So. 2d 385, 381 (Miss. 1985), the supreme court observed how "remarkably similar" section 71-3-71 is to section 43-13-125.

directive of section 43-13-125(2) could not be disregarded. *See McNeal*, 943 So. 2d at 661 (¶¶13-14).

¶17.   Under section 43-13-125(2), "Any amount recovered by a recipient or his or her legal representative shall be applied," first, to the recipient's attorney's fees and legal costs of recovery, second, to the amount of Medicaid's interest, and, last, to the recipient, should there be "any excess." While the chancellor recognized Javas's attorney's right to a priority payment of $8,640.89 for legal fees and expenses, the chancellor improperly ordered that Melissa could receive the excess on Javas's behalf without first reimbursing Medicaid $10,308.40.

¶18.   The chancellor based his decision not to follow section 43-13-125(2)'s directive by asserting Medicaid's $10,308.40 recovery would unfairly leave Javas with a little over $6,000—a "neglible sum," as he put it. While this may be true, "a chancellor, despite his broad equitable powers, is not free to disregard the clear guidance of a pertinent statute simply because he concludes that it would be unfair on the particular facts of the case to apply the statute according to its terms." *McNeal*, 943 So. 2d at 661 (¶13) (quoting *Tackett*, 778 So. 2d at 143 (¶27)). Further, were Melissa to comply with the order and receive the settlement proceeds without first reimbursing Medicaid, she would be in clear violation of section 43-11-125(2), which in turn would jeopardize her and Javas's Medicaid-eligibility

status. *See* Miss. Code Ann. § 43-13-307 (Rev. 2009).[8]

¶19.    Though the Mississippi Constitution vests chancery courts with subject-matter jurisdiction over equitable matters involving minors,[9] such jurisdiction does not permit exceptions to clear statutes because they apply to minors. "[E]quity follows the law," and "courts of equity cannot modify or ignore an unambiguous statutory principle in an effort to shape relief." *In re Estate of Smith*, 891 So. 2d 811, 813 (¶5) (Miss. 2005) (citing *In re Estate of Miller*, 840 So. 2d 703, 708 (¶14) (Miss. 2003)). Because the order approving the minor's settlement contained a condition that conflicts with the clear statutory principle that Medicaid shall recover its interest from the settlement, the order cannot stand. We have no option but to reverse the chancellor's judgment and remand this case back to the chancery court to oversee a settlement that both takes into account Javas's best interest and Medicaid's unambiguous statutory right to reimbursement from the settlement.

¶20.    **THE JUDGMENT OF THE JASPER COUNTY CHANCERY COURT IS**

---

[8] Under section 43-13-307:

Any applicant or recipient, *inclusive of the grantee relative of a dependent child* who refuses to cooperate with or to provide reasonable assistance to the Division of Medicaid against a liable third party in accordance with Section 43-13-125, Mississippi Code of 1972, or fails to pay over to the Division of Medicaid third-party payments as provided in this article, or fails or refuses to cooperate with the local county department of public welfare shall not be eligible for Medicaid benefits under the Mississippi Medicaid Law.

(Emphasis added).

[9] *Louisville & Nashville R.R. v. Hasty*, 360 So. 2d 925, 927 (Miss. 1978) (citing Miss. Const. art. 6, § 159(d)).

**REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON AND FAIR, JJ., CONCUR. JAMES, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**