# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2003-CT-00599-SCT

*EARTHA JAMISON*

*v.*

*DR. JAMES KILGORE d/b/a FOOT CLINIC OF COLUMBUS*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 02/26/2003 |
| TRIAL JUDGE: | HON. JAMES T. KITCHENS, JR. |
| COURT FROM WHICH APPEALED: | LOWNDES COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | WILLIAM L. BAMBACH |
| ATTORNEYS FOR APPELLEE: | JOHN G. WHEELER |
| | L. BRADLEY DILLARD |
| NATURE OF THE CASE: | CIVIL - MEDICAL MALPRACTICE |
| DISPOSITION: | AFFIRMED - 01/27/2005 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**DICKINSON, JUSTICE, FOR THE COURT:**

¶1.     This is an appeal from an order entered by the Circuit Court of Lowndes County

granting summary judgment to Dr. James Kilgore for claims brought by Eartha Jamison.

## BACKGROUND FACTS AND PROCEEDINGS

¶2.     We begin with a brief review of the facts borrowed from the opinion rendered by the

Court of Appeals:

> On April 14, 1997, Eartha Jamison had a bunion removed from her foot
> by Dr. James Kilgore, a podiatrist.  Jamison claims that prior to the procedure
> Dr. Kilgore told her that within four to six weeks following the bunion removal
> she would be pain free.  Jamison asserts that based on the guarantee of Dr.

Kilgore she agreed to have the procedure on her foot. On April 13, 1999, Jamison filed a complaint claiming that Dr. Kilgore failed to obtain her informed consent prior to performing the bunion removal. Specifically, that he failed to properly inform her of the risks/consequences of the procedure or to disclose reasonable alternatives. Jamison asserted that she was experiencing daily pain from the procedure and was forced to miss nine months of work due to the procedure.

*Jamison v. Kilgore,* 2004 WL 614780 at *1 (¶¶2-3) (Miss. Ct. App. 2004).

¶3. On April 5, 2002, Dr. Kilgore moved for summary judgment, claiming Jamison's failure to produce an expert witness was fatal to her claim. The trial court agreed, stating that expert testimony is required to establish a claim that a doctor failed to obtain a patient's informed consent.

¶4. Jamison's appeal was assigned to the Court of Appeals, which affirmed the summary judgment. *Id.* Jamison filed a petition with to this Court for a writ of certiorari, and we granted certiorari in order to address the issue of the need for expert medical testimony in cases where a plaintiff alleges lack of informed consent.

¶5. Jamison contends that the Court of Appeals' opinion conflicts with prior decisions rendered by this Court. We disagree, and we affirm.

## STANDARD OF REVIEW

¶6. This Court has held:

We employ a de novo standard of review of a trial court's grant or denial of a summary judgment and examine all the evidentiary matters before it - admissions in pleadings, answers to interrogatories, depositions, affidavits, etc. The evidence must be viewed in the light most favorable to the party against whom the motion had been made. If, in this view, there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law, summary

2

judgment should forthwith be entered for the movant. Otherwise, the motion should be denied. ***Heigle v. Heigle***, 771 So. 2d 341, 345 (Miss. 2000).

***Hurdle v. Holloway***, 848 So. 2d 183, 185 (Miss. 2003).

## ANALYSIS

¶7. Jamison alleges that Dr. Kilgore failed to obtain her informed consent before performing the surgical procedure on her foot.[1] Analyzing and applying this Court's holding in two previous cases, the Court of Appeals addressed the question in ***Hill v. Warden***, 796 So. 2d 276 (Miss. Ct. App. 2001), as follows:

> When an individual claims that a physician has breached the duty to obtain the patient's informed consent the familiar tort elements apply: duty, breach, causation, and damage. ***Phillips v. Hull***, 516 So. 2d 488, 492 (Miss. 1987). If there is a physician-patient relationship, the doctor automatically has the duty to inform and procure the consent of the patient as it relates to the proposed treatment. ***Palmer v. Biloxi Reg'l Med. Ctr., Inc.***, 564 So. 2d 1346, 1363 (Miss. 1990). However, the individual claiming a breach of this duty must make more than mere allegations to substantiate that a breach has occurred. ***Id.*** In ***Palmer***, the Mississippi Supreme Court held:
>
> > Once proof of duty and breach of that duty is provided, the plaintiff [i.e., Ms. Hill] is required to produce evidence of two sub-elements of causation. First, the plaintiff must show that a reasonable patient would have withheld consent had she been properly informed of the risks, alternatives, and so forth. And second, the plaintiff must show that the treatment was the proximate cause of the worsened condition. That is, plaintiff must show that she would not have been injured had the appropriate

---

[1] There is evidence that there was a "consent for operation"; however, the record does not contain the consent form and as the Court of Appeals correctly held: "this Court will not speculate about the contents of the consent form or give it any factual weight because it is not included in the record for our review." ***Jamison***, 2004 WL 614780 *3 (¶10).

standard of care been exercised. Generally, proof of the later sub-element requires expert testimony that the defendant's conduct--not the patient's original illness or injury--led to the worsened condition. *Palmer*, 564 So.2d at 1364 (emphasis theirs) (citations omitted).

Under this case law, not only do we question whether Ms. Hill established the element of a breach of the duty to obtain informed consent, but it is abundantly clear that she failed to create a factual issue regarding the last two elements of the tort claim. By languishing in her production of an expert witness, she did not have the evidence to establish the elements of proximate cause and damages. Therefore, this issue is without merit.

*Hill*, 796 So. 2d at 281-82.

¶8.      In *Palmer*, this Court stated:

The doctrine of informed consent represents the application to medical practice of principles of tort law. Thus, when a lack of informed consent is claimed, the plaintiff has the burden to prove by a preponderance each element of the prima facie case: duty, breach of duty, proximate causation, and injury.

*Palmer*, 564 So. 2d at 1363 (citation omitted).

¶9.      Continuing, this Court held:

When a physician-patient relationship exists, the physician owes the patient a duty to *inform* and *obtain* consent with regard to the proposed treatment. [citation omitted]. Proving *breach* of duty requires more than mere allegation that the physician did not obtain informed consent.

*Id*.

* * *

Once proof of duty and breach of that duty is provided, the plaintiff is required to produce evidence of two subelements of causation. First, the plaintiff must show that a reasonable patient would have withheld consent had she been properly informed of the risks, alternatives, and so forth. *Hull*, 516 So.2d at 493 (reaffirming Mississippi's adoption of the objective test); [citation

4

omitted].  And second, the plaintiff must show that the treatment was the proximate cause of the worsened condition (*i.e.*, injury).  That is, the plaintiff must show that she would not have been injured had the appropriate standard of care been exercised.  Generally, proof of the latter sub-element requires expert testimony that the defendant's *conduct-not* the patient's original illness or injury- led to the worsened condition.

564 So. 2d at 1364.

¶10.  In *Reikes v. Martin*, 471 So. 2d 385, 392 (Miss. 1985), this Court recognized and adopted the objective test of causation. In *Reikes*, this Court held that under the objective test, "the question becomes whether or not a reasonably prudent patient, fully advised of the material known risks, would have consented to the suggested treatment." *Id*.  This Court explained in footnote 3 that "'[k]nown risks' are those which would be known to a careful, skillful, diligent and prudent practitioner or specialist, . . ." *Id*.n.3. *See also* **Hudson v. Parvin**, 582 So. 2d 403, 410 (Miss. 1991); *Palmer*, 564 So. 2d at 1364; *Hull*, 516 So. 2d at 493 (reaffirming the adoption of the objective test of causation").

¶11.  The objective test of causation is applied in analyzing the first subelement of causation. This Court has held that expert testimony is not required on this issue. *Hull*, 516 So. 2d at 492.

¶12.  In granting summary judgment to Dr. Kilgore, the trial court stated:

Jamison alleges that Kilgore failed to obtain her informed consent before performing the surgical procedure on her foot.  It is undisputed that Kilgore had a duty to explain the procedure to Jamison.  Not surprisingly, Kilgore contends that he fully informed Jamison of the risks associated with the bunionectomy. However, assuming arguendo that Kilgore breached this duty to inform, Jamison has failed to offer expert testimony which would satisfy the causation and damage elements required under Mississippi law. *Hill*, 796 So. 2d at 282.

5

Just as the Court of Appeals held in *Hill*, Jamison, by procrastinating in her production of an expert witness failed to create a factual issue regarding the elements of proximate cause and injury.

¶13. Thus, the trial court's opinion turned on its belief that expert testimony was required to establish "proximate cause and injury."

¶14. In reviewing the trial court's decision, the Court of Appeals stated:

Dr. Kilgore asserts that when a complaint, such as Jamison's, asserts a claim of lack of informed consent based upon allegations of inadequate or incomplete information given to them by the doctor, expert testimony is necessary to inform the fact-finder of exactly what information the doctor should have communicated to the patient, thus explaining what constituted the breach of care. We agree.

* * *

The trial court agreed with Dr. Kilgore and held that expert testimony was needed on the issues of breach, proximate cause and injury. Jamison cannot survive summary judgment by making mere allegations of lack of informed consent.

*Jamison,* 2004 WL 614780 *3 (¶¶11-12).

¶15. Thus, both the trial court and the Court of Appeals focused on whether expert testimony was necessary to establish "breach, proximate cause and injury." We find the resolution of this appeal turns – not on breach, proximate cause or injury – but rather on the need for expert testimony to establish the duty owed by a doctor to the patient. It is not enough to say, as this Court did in *Palmer*: "[i]f there is a physician-patient relationship, the doctor automatically has the duty to inform and procure the consent of the patient as it relates to the proposed treatment." *Palmer*, 564 So. 2d at 1363. While that statement is true enough, more needs to be presented by the plaintiff to survive summary judgment. As stated by the Court of Appeals,

6

"Informed consent originates from the theory that a competent adult has the right to control his body and to make an informed decision as to whether to authorize a medical procedure." *Jamison*, 2004 WL 614780 *2 (¶6) (citing *Palmer*, 564 So. 2d at 1363). "If there is a physician-patient relationship, the doctor automatically has the duty to inform and procure the consent of the patient as it relates to the proposed treatment." *Palmer*, 564 So. 2d at 1363.

¶16. One cannot make an informed decision without being informed; but, informed of what? Our cases speak in terms of informing a patient of certain "known risks". *Phillips ex rel. Phillips v. Hull*, 516 So. 2d 488, 493 (Miss. 1987). In *Hull*, this Court held that a physician is required to "disclose those known risks which would be material to a prudent patient in determining whether or not to undergo the suggested treatment." *Id*. This language can be deceptive, since it appears to focus on separating material risks from those which are not material. We find, however, that the first step in the process is a determination of known risks. Once the known risks are enumerated, they can then be evaluated as to which are material.

¶17. Thus, where a plaintiff charges that a doctor performed a procedure without first obtaining informed consent, the plaintiff's first task is to establish what are known risks of the procedure. This requires an expert opinion.[2]

¶18. An undesirable symptom or condition following a medical procedure may or may not be a known risk of the procedure. In the case sub judice, Jamison tells us that, following the procedure performed by Dr. Kilgore, she experienced daily pain long beyond the four to six

[2]Such expert testimony may be developed from expert witnesses, admissions by the defendant, or other authoritative sources as allowed by the Mississippi Rules of Evidence.

weeks predicted by Dr. Kilgore. She charges that Dr. Kilgore did not inform her of this known risk. However, in order to establish that such continuing pain is a known risk of the procedure, expert testimony is required. In this requirement, Jamison failed.

¶19. Had Jamison established that the unexpected result she experienced was a known risk of the procedure, she then could have proceeded to the question of whether Dr. Kilgore had a duty to disclose it. It is then that the question of materiality of the risk is addressed. If a known risk is found to be material, the question of causation must then be addressed.[3]

¶20. Citing *Phillips*, 516 So. 2d at 494, Jamison tells us that expert testimony is not required to prove the communications between the doctor and the patient. While Jamison is correct in this argument, it is of no help in establishing the known risks of the procedure. Jamison relies on *Barner v. Gorman*, 605 So. 2d 805 (Miss. 1992), to support her argument that a genuine issue of material fact exists, and the trial court erred by granting the motion for summary judgment. In *Barner*, the plaintiff sought treatment from Dr. Gorman, a plastic surgeon, for a scar on the her neck. *Id.* at 806. Following surgery, Barner had recurrent keloid scarring. After experiencing this unexpected result, Barner sued Dr. Gorman, who then filed a motion for summary judgment which he supported with an affidavit attesting that he informed her of the risk. *Id.* Barner responded with an affidavit which claimed that Dr. Gorman did not explain the risk. *Id.* at 807. The question of whether the remaining scar was a known risk of the surgery was not an issue. Thus, *Barner* is inapposite to the case sub judice.

---

[3]For a discussion of causation in informed consent cases, *see Palmer*, 564 So. 2d at 1364.

¶21.    Jamison also relies on *Hull*, 516 So. 2d 488, and *Cole v. Wiggins*, 487 So. 2d 203 (Miss. 1986).    In *Hull*, this Court held that no medical testimony is needed to establish the communication between a doctor and the patient. *Hull*, 516 So. 2d at 494.  In *Cole*, it was held that "[m]atters which are within the common knowledge of laymen are exceptions to the rule that expert medical testimony is required." *Cole*, 487 So. 2d at 206.  Neither of these cases, however, address the plaintiff's duty to first establish the known risks of the procedure.  They are, therefore, not helpful here.

## CONCLUSION

¶22.    We hold that Jamison failed to establish, through expert testimony, that the condition about which she complains was a risk of the procedure performed by Dr. Kilgore.  We therefore affirm the judgments of the Court of Appeals and the Circuit Court of Lowndes County.

¶23.    **AFFIRMED.**

**SMITH, C.J., WALLER AND COBB, P.JJ., AND RANDOLPH, J., CONCUR. GRAVES, J., CONCURS IN RESULT ONLY.  DIAZ, EASLEY AND CARLSON, JJ., NOT PARTICIPATING.**

9