CARLTON, J.,
for the Court:
¶ 1. Barbara Bolton filed a medical-malpractice claim against Dr. Roger Weiner, alleging negligence in his care and treatment of her. The Coahoma County Circuit Court granted both Dr. Weiner’s motion in limine to strike the testimony of Bolton’s expert witness and Dr. Weiner’s motion for summary judgment. Bolton appeals the circuit court’s judgment and raises the following issues: (1) whether the circuit court judge erred by admitting a journal article into evidence over Bolton’s objection; (2) whether the circuit' court judge erred by granting Dr. Weiner’s motion in limine to strike the testimony of Bolton’s expert witness; and (3) whether, the circuit court judge erred by granting Dr. Weiner’s motion for summary judgment. Finding no error, we affirm.
FACTS
¶ 2. Between April 4, 2002, and November 8, 2002, Dr. Weiner, a cardiologist, treated Bolton for her heart problems. During the course of treatment, Dr. Weiner prescribed Cordarone[1] for Bolton. After Bolton started taking Cordarone, she noticed that her vision began to blur. The condition worsened, and Bolton consulted Dr. Richard Drewry, a neuro-ophthalmologist, who believed her loss of sight was related to Cordarone.
¶ 3. Bolton filed a lawsuit against Dr. Weiner, alleging medical negligence. Bolton retained the services of Dr. Keith Mansel, an internist practicing primarily in the field of pulmonology, to review her records. Specifically, Bolton sought Dr. Mansel’s opinion on whether Dr. Weiner had breached the standard of care by: (1) failing to warn her of the potential vision problems caused by Cordarone; and (2) failing to advise her to schedule regular eye examinations with an ophthalmologist.
¶ 4. Dr. Mansel testified at his deposition that a physician who prescribes a drug should possess knowledge of the drug and its side effects. Dr. Mansel further testified that the physician should not only warn patients about the side effects but should also advise them of any follow-up they might need. According to Dr. Man-sel, this standard did not vary from specialty to specialty. Therefore, although not a cardiologist like Dr. Weiner, Dr. Mansel testified that in his opinion Dr. Weiner breached the standard of care by failing to refer Bolton for periodic eye examinations. Dr. Mansel also testified that a physician should make sure to inform patients of any potentially severe side effects that a drug might have, and he stated that he considered blindness to be a severe side effect.
¶ 5. When asked whether he agreed with Dr. Drewry’s deposition testimony that no medical literature existed to indicate a direct causal relationship between amiodarone and optic neuropathy, Dr. Mansel responded, “I would certainly defer to Dr. Drewry’s opinion and would agree with that.” Dr. Mansel further testified that he based his opinion regarding the proper standard of care on medical literature he read. He could not remember any specific literature other than the 2002 version of the Physicians’ Desk Reference (PDR), which he considered to be very authoritative and “the primary reference that physicians use about medications.” The PDR, which provides a compilation of drug manufacturers’ medication package inserts, states the following:
*336 Cases of optic neuropathy and/or optic neuritis, usually resulting in visual impairment, have been reported in patients treated with amiodarone. In some cases, visual impairment has progressed to permanent blindness. Optic neuropa-thy and/or neuritis may occur at any time following initiation of therapy. A causal relationship to the drug has not been clearly established. If symptoms of visual impairment appear, such as changes in visual acuity and decreases in peripheral vision, prompt ophthalmic examination is recommended. Appearance of optic neuropathy and/or neuritis calls for re-evaluation of Cor-darone therapy.... Regular ophthalmic examination, including fundoscopy and slit-lamp examination, is recommended during administration of Cor-darone.
Physicians’ Desk Reference 3489 (2002) (emphasis added).
¶ 6. Trial for this case was scheduled for July 80, 2012. Although both Dr. Drewry and Dr. Mansel would be unavailable for trial, Bolton planned to introduce their deposition testimony during the proceedings. On July 27, 2012, however, Dr. Weiner filed a motion in limine to strike Dr. Mansel’s expert testimony and an ore tenus motion to strike Dr. Drewry’s causation testimony. In support of his motion, Dr. Weiner argued that neither expert’s opinion was supported by peer-reviewed literature.
¶ 7. Dr. Weiner also provided a journal article to the circuit court, which he attempted to offer into evidence. A summary at the beginning of the journal article provided:
Amiodarone is one of the most effective antiarrhythmic drugs currently .available. Although a subject of intense controversy, a causal link between amiodarone and optic neuropathy has never been firmly established. Indications for treatment with amiodarone are outlined, and features of the optic neuro-pathy in patients on amiodarone are compared with those of nonarteritic anterior ischemic optic neuropathy. An approach to patients treated with amio-darone who present with optic neuropa-thy is outlined, and suggestions for a registry and prospective study of such patients are presented.
Marjorie A. Murphy & John F. Murphy, Amiodarone and Optic Neuropathy: The Heart of the Matter, 25 J. of Neuro-Ophthalmology 232, 232 (2005) (emphasis added).
¶ 8. Bolton objected to the motion and to the admission of the journal article, but the circuit court judge overruled her objection and allowed the article into evidence. In his order granting Dr. Weiner’s motion to exclude the causation testimony of Bolton’s experts, the circuit court judge stated:
Both [Dr. Drewry and Dr. Mansel] testified there is no medical literature indicating a direct causal relationship between [a]miódarone and the optic neuropathy suffered by [Bolton]. At the hearing on the motion, Dr. Weiner offered evidence from the [PDR] that a causal relationship to the drug and optic neuritis has not been clearly established. Dr. Weiner also offered evidence of a peer-reviewed article ... that stated there was no causal connection between [a]miodarone and optic neuritis. [Bolton] was unable to refute the peer-reviewed article.... The [c]ourt makes no ruling on the qualifications of Dr. Mansel as an expert. However, having considered said [motion based on the fact Dr. Mansel’s and Dr. Drewry’s opinions were not supported by peer-reviewed literature, arguments of counsel, and [Bolton’s] *337 being unable to rebut such testimony, the causation testimony of [Bolton’s] experts should be excluded!.]
¶ 9. Following the circuit court’s ruling on his motion, Dr. Weiner presented a motion for summary judgment. The circuit court judge granted the motion for summary judgment in Dr. Weiner’s favor because Bolton no longer had admissible expert testimony to prove causation. Aggrieved by the circuit court’s rulings, Bolton appeals.
DISCUSSION
I. Whether the circuit court judge erred by admitting the journal article into evidence over Bolton’s objection.
¶ 10. In her first assignment of error, Bolton argues that the circuit court judge erred by admitting into evidence the journal article offered by Dr. Weiner. This Court reviews the admission or suppression of evidence for abuse of discretion. Miss. Transp. Comm’n v. McLemore, 863 So.2d 31, 34 (¶ 4) (Miss.2003). Bolton asserts that the journal article was not listed in the pretrial order and that she first became aware of its existence during Dr. Weiner’s motion in limine to strike Dr. Mansel’s testimony. Bolton contends this lack of notice of the article prevented her from performing her own research and providing other articles as rebuttal evidence. She therefore argues that Dr. Weiner’s actions amounted to trial by ambush.
¶ 11. As acknowledged by the Mississippi Supreme Court, “[t]he purpose of the strict discovery rules is ... to avoid trial by ambush and to ensure that all parties involved have a reasonable time for trial preparation.” Poole ex rel. Poole v. Avara, 908 So.2d 716, 725 (¶ 19) (Miss.2005) (internal citations and quotation marks omitted). We also recognize the trial court’s role, as gatekeeper on questions of the admissibility of expert testimony, to assess any proffered expert opinion testimony for admissibility in accordance with Rule 702 of the Mississippi Rules of Evidence and our precedent. See McLemore, 863 So.2d at 39-40 (¶¶ 24-25). “Furthermore, the admission of expert testimony is within the sound discretion of the trial judge[,]” and the decision “will stand unless we conclude that the discretion was arbitrary and clearly erroneous, amounting to an abuse of discretion.” Id. at 34 (¶ 4) (citation omitted).
¶ 12. A review of the record in the present case reflects that the admission of the journal article into evidence neither caused unfair surprise nor resulted in trial by ambush. Dr. Weiner offered the journal article as evidence upon the circuit court’s consideration and hearing of his motion in limine, which asserted that Dr. Mansel’s testimony lacked sufficient basis for admission into evidence. Specifically, Dr. Weiner argued that Dr. Mansel’s expert opinion testimony lacked support by any peer-reviewed literature and otherwise failed to meet the requirements of Rule 702.
¶ 13. As the record reflects, the journal article was consistent with the basis of the previously filed motion in limine and the previous deposition testimony of Bolton’s own experts, Dr. Drewry and Dr. Mansel. As acknowledged by the circuit court judge, both of Bolton’s experts testified that no medical literature supported a finding of any direct causal relationship between amiodarone and the optic neuro-pathy suffered by Bolton.[2] Rather than *338 amounting to trial by ambush, the article offered as evidence by Dr. Weiner merely served to reinforce the deposition testimony provided by Bolton’s experts and to support the basis for Dr. Weiner’s motion in limine.
¶ 14. Therefore, as demonstrated by these facts, Bolton possessed notice of both Dr. Weiner’s motion in limine and his basis for making the motion. Further, she already possessed knowledge of the information contained within Dr. Weiner’s motion from the deposition testimony of her own experts. As a result, we find no abuse of discretion in the circuit court judge’s decision to admit the article into evidence at the motion hearing. See McLemore, 868 So.2d at 34 (¶ 4). Accordingly, this issue lacks merit.
II. Whether the circuit court judge erred by granting the motion in limine to strike Dr. Mansel’s testimony.
¶ 15. In addressing this assignment of error, we acknowledge that we review a circuit court’s decision as to the admissibility of expert testimony for abuse of discretion. Poole, 908 So.2d at 721 (¶ 8). We recognize that, in his order excluding Dr. Mansel’s testimony, the circuit court judge rendered no ruling on Dr. Mansel’s qualifications as an expert.[3] Instead, the circuit court judge granted Dr. Weiner’s motion because Dr. Mansel’s and Dr. Drewry’s opinions lacked support by peer-reviewed literature and because Bolton failed to rebut Dr. Weiner’s evidence regarding the journal article. See M.R.E. 702. Bolton now argues on appeal that the circuit court judge erred by granting Dr. Weiner’s motion in limine to strike Dr. Mansel’s testimony. Bolton asserts that the journal article Dr. Weiner offered failed to actually contradict Dr. Mansel’s opinion. Bolton instead contends:
[T]he article simply points out the successful treatment of heart problems with amiodarone; but [nowhere] does the article state — or even indicate — that the prescribing physician is relieved from following warnings and instructions on the drug manufacturer’s insert. The article does point out that the causal connection between the drug and optic neu-ropathy has not been firmly established; however, it does not state that the causal connection has been excluded.
¶ 16. Our supreme court has previously stated:
[A] motion in limine should be granted only if (1) the material or evidence in question will be inadmissible at a trial under the rules of evidence; and (2) the mere offer, reference, or statements made during trial concerning the material will tend to prejudice the jury. Furthermore, the admission of expert testimony is within the sound discretion of the trial judge. Therefore, the decision of a trial judge will stand unless we conclude that the discretion was arbitrary and clearly erroneous, amounting to an abuse of discretion.
*339 McLemore, 863 So.2d at 34 (¶ 4) (internal-citations and quotation marks omitted).
¶ 17. Our law clearly provides that expert testimony should only be admitted if it meets the requirements of Rule 702. Bailey Lumber & Supply Co. v. Robinson, 98 So.3d 986, 991 (¶ 13) (Miss.2012).[4] Rule 702 provides:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.
¶ 18. Under Rule 702, expert testimony should only be admitted if it satisfies the following two-pronged inquiry: (1) “the witness must be qualified by virtue of his ... knowledge, skill, experience[,] or education”; and (2) “the witness’s scientific, technical[,] or other specialized knowledge must assist the trier of fact in understanding or deciding a fact in issue.” McLemore, 863 So.2d at 35 (¶ 7) (internal citations omitted). See also Bailey Lumber, 98 So.3d at 992 (¶ 13) (“In other words, the expert witness must be quali-fled to render the opinion, and the testimony must be relevant and reliable.” (citation omitted)).
¶ 19. As reflected in the record, the circuit court judge found that Bolton and her proffered expert, Dr. Mansel, failed to show that Dr. Mansel’s testimony relied upon sufficient facts or data. The record shows that Dr. Mansel’s opinion testimony lacked support by any peer-reviewed literature or the PDR. The record further reflects that the testimony at issue failed to meet the requirements for admission into evidence under Rule 702 and that the circuit court judge thus found that Bolton failed to show Dr. Mansel’s testimony was derived from reliable principles and methods.[5]
¶20. Dr. Mansel’s opinion- testimony failed to establish that Dr. Weiner failed to disclose a material known risk. Dr. Man-sel’s expert testimony also failed to create a dispute of material fact as to proximate causation since his opinion lacked Rule 702’s requirements for admission into evidence. Dr. Mansel’s opinion testimony was based on the PDR and articles that lacked peer-review, and Bolton failed to show that Dr. Mansel’s opinion otherwise met thé requirements of Rule 702. The record therefore reflects no abuse of discretion by the circuit court’s decision to exclude Dr. Mansel’s testimony. See *340 Poole, 908 So.2d at 728-24 (¶¶ 15, 18). As a result, this issue lacks merit.
III. Whether the circuit court judge erred by granting Dr. Weiner’s motion for summary judgment.
¶ 21. In her third and final assignment of error, Bolton argues that the circuit court judge erred by granting summary judgment in favor of Dr. Weiner. She asserts that Dr. Weiner violated the warnings and instructions contained on the package insert for Cordarone in the PDR, and she asks this Court to remand the case for a trial on liability and damages. In response, Dr. Weiner argues that Bolton lacked an expert who could prove causation, an essential element of her claim. Dr. Weiner therefore contends that the circuit court properly granted his motion for summary judgment because Bolton failed to show a dispute of material fact.
¶ 22. “The standard of review in considering a circuit court’s grant or denial of summary judgment is de novo.” Turner v. Trustmark Nat’l Bank, 105 So.Sd 1128, 1124 (¶ 3) (Miss.Ct.App.2012). When we determine whether the circuit court committed an error by granting summary judgment, “we must examine all the evidentiary matters before us, including admissions in pleadings, answers to interrogatories, depositions, and affidavits in the light most favorable to the nonmov-ant.” Id. (citation and quotation marks omitted). “The movant carries the burden of demonstrating that no genuine issue of material fact exists, and the nonmovant is given the benefit of the doubt as to the existence of an issue of material fact.” Id.
¶ 23. In Troupe v. McAuley, 955 So.2d 848, 856 (¶ 22) (Miss.2007), the supreme court stated the following:
To present a prima facie case of medical malpractice, a plaintiff, (1) after establishing the doctor-patient relationship and its attendant duty, is generally required to present expert testimony (2) identifying and articulating the requisite standard of care; and (3) establishing that the defendant physician failed to conform to the standard of care. In addition, (4) the plaintiff must prove the physician’s noncompliance with the standard of care caused the plaintiffs injury, as well as proving (5) the extent of the plaintiffs damages. A physician who is sufficiently familiar with the standards of a medical specialty, may testify as an expert, even though he does not practice the specialty himself. It is our general rule that in a medical[-]malpractice action negligence cannot be established without medical testimony that the defendant failed to use ordinary skill and care.
(Internal citations and quotation marks omitted).
¶ 24. Mississippi jurisprudence establishes that a physician possesses a duty to disclose only material known risks, and the plaintiff possesses the burden to present evidence sufficient to show a dispute of material fact for each element — duty, breach of duty, proximate causation, and injury. Dunn v. Yager, 58 So.3d 1171, 1200-01 (¶ 73) (Miss.2011). Our jurisprudence also establishes that a physician may not be required to disclose immaterial or unexpected risks. Id.[6] The supreme court has also adopted an objective test for causation and an objective patient-need standard for determining the materiality of a risk. Whittington v. Ma *341 son, 905 So.2d 1261, 1265-66 (¶¶ 20-21) (Miss.2005).
¶ 25. In the present case, Bolton failed to show a dispute of material fact. Bolton failed to present evidence that showed Dr. Weiner breached his duty by failing to disclose a material known risk. Bolton also failed to present expert testimony sufficient to show a dispute of material fact on proximate causation. As a result, Bolton has failed to meet her burden. See Dunn, 58 So.3d at 1200-01 (¶ 78).
¶ 26. We therefore find that Bolton failed to establish an evidentiary basis that supported the existence of a dispute of material fact. As acknowledged above, our general rule in medical-malpractice cases requires a plaintiff to present expert testimony to prove that the defendant physician failed to conform to the standard of care. As stated, without Dr. Mansel’s expert testimony, Bolton failed to show the existence of material facts to dispute Dr. Weiner’s claim that he conformed to the applicable standard of medical care in treating her. We therefore find no error in the circuit court judge’s grant of summary judgment in favor of Dr. Weiner.[7] This assignment of error lacks merit.
¶ 27. THE JUDGMENT OF THE COAHOMA COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING, P.J., BARNES, ISHEE AND MAXWELL, JJ„ CONCUR. ROBERTS, J., CONCURS IN RESULT ONLY .WITHOUT SEPARATE WRITTEN OPINION. GRIFFIS, P.J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. FAIR AND JAMES, JJ., DISSENT WITHOUT SEPARATE WRITTEN OPINION.

. Cordarone’s'generic name is amiodarone.

. See Dunn v. Yager, 58 So.3d 1171, 1200-01 (¶ 73) (Miss.2011) (stating that a physician must disclose only “material known risks” but that the "physician may not be required *338 to inform the patient of unexpected or immaterial risks” (citation omitted)).

. Dr. Weiner’s motion in limine sought to exclude Dr. Mansel's expert opinion testimony for two reasons. He first argued that the testimony should be excluded because Dr. Mansel admitted that he was a pulmonologist rather than a cardiologist. Dr. Weiner argued that Dr. Mansel "attempts to state standard[-]of[-]care opinions on what information should be imparted to a patient who is given [a]miodarone by a cardioiogist[,]” but Dr. Mansel "is not properly qualified by education, training[,] and experience to testify on that subject." Second, Dr. Weiner contended that Dr. Mansel's opinions were not supported by the PDR or any peer-reviewed literature.

. Our supreme court has provided that "[t]he doctrine of informed consent represents the application to medical practice of principles of tort law. Thus, when a lack of informed consent is claimed, the plaintiff has the burden to prove by a preponderance each element of the prima facie case: duty, breach of duty, proximate causation, and injury.” Dunn, 58 So.3d at 1200 (¶ 73) (quoting Palmer v. Biloxi Reg’l Med. Ctr., Inc., 564 So.2d 1346, 1363 (Miss.1990)). The supreme court has also found that no doctor can comply with a requirement to disclose every possible risk. Id. at 1200-01 (¶¶ 72-73) (citing Whittington v. Mason, 905 So.2d 1261, 1264-66 (¶¶ 16, 24) (Miss.2005); Jamison v. Kilgore, 903 So.2d 45, 48-49 (¶¶ 7-10) (Miss.2005)).

. See Smith ex rel. Smith v. Clement, 983 So.2d 285, 290 (¶¶ 19-20) (Miss.2008) (finding no abuse of discretion in the trial judge's decision to strike the summary-judgment affidavit of the school district’s expert where the expert’s conclusions lacked a sufficient factual basis and were not the product of reliable principles and methods). See also Dunn, 58 So.3d at 1200-01 (¶ 73).

. See also Jamison, 903 So.2d 45, 48-50 (¶¶ 10-20) (discussing "known risks”); Reikes v. Martin, 471 So.2d 385, 392 (Miss.1985) (addressing the materiality-of-the-risk standard to determine what risks must be revealed to a patient).

. See Dunn, 58 So.3d at 1200-01 (¶¶ 72-73).