# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-CA-00184-COA

**JERRY BOWEN AND CHERYL BOWEN**               **APPELLANTS**

**v.**

**AMORY HMA, LLC D/B/A GILMORE**               **APPELLEES**
**MEMORIAL REGIONAL MEDICAL CENTER**
**AND PATRICK ANDERSON MURPHREE, M.D.**

| | |
|---|---|
| DATE OF JUDGMENT: | 01/13/2015 |
| TRIAL JUDGE: | HON. JAMES SETH ANDREW POUNDS |
| COURT FROM WHICH APPEALED: | MONROE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | NED MCDONALD III |
| ATTORNEYS FOR APPELLEES: | LOUIS G. BAINE III |
| | MARK P. CARAWAY |
| | STEPHEN P. KRUGER |
| | KIMBERLY NELSON HOWLAND |
| NATURE OF THE CASE: | CIVIL - MEDICAL MALPRACTICE |
| TRIAL COURT DISPOSITION: | SUMMARY JUDGMENT GRANTED TO APPELLEES |
| DISPOSITION: | AFFIRMED - 06/28/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE IRVING, P.J., BARNES AND GREENLEE, JJ.

### BARNES, J., FOR THE COURT:

¶1. On December 6, 2007, Jerry Bowen underwent outpatient surgery on his right shoulder at Amory HMA LLC d/b/a Gilmore Memorial Regional Medical Center (Amory HMA). Bowen signed a "Consent for Anesthesia Services" form prior to surgery, which stated that "loss of sensation, loss of limb function, [and] paralysis" are complications that can occur with the administration of anesthesia and that "Major/Minor Nerve Block" risks include "weakness, persistent numbness, residual pain." Dr. Patrick Murphree, an

anesthesiologist and employee of Amory HMA, administered an interscalene block prior to general anesthesia. After surgery, Bowen experienced continuous numbness and weakness in his shoulder. He sought treatment from several doctors who opined that Bowen had suffered an injury to his brachial plexus nerve, likely as a result of the interscalene block administered by Dr. Murphree.

¶2.    Bowen filed a complaint on June 2, 2010, alleging that he suffered a "severe and debilitating injury" due to the negligence of Amory HMA and Dr. Murphree.[1] Bowen's occupation was installing acoustical tiles in ceilings, and he claimed that since the surgery, he had been unable to raise his right arm over his head. He asserted that the Defendants had breached the standard of care "[b]y failing to obtain informed consent from . . . Bowen prior to the interscalene block[.]"

¶3.    After discovery was conducted, Amory HMA filed a motion for summary judgment on October 17, 2014, arguing that Bowen failed to produce "any competent medical evidence to establish that any of the Defendants deviated, in any way, from the applicable standard of care" or caused the alleged damages. None of Bowen's doctors who had opined regarding the cause of the nerve damage were designated as experts. The motion further noted that any informed-consent claim should be dismissed against Amory HMA, as it was Dr. Murphree's duty to obtain informed consent.[2] Dr. Murphree joined Amory HMA's motion for summary

---

[1] Bowen's wife, Cheryl, also asserted a claim for loss of consortium.

[2] Bowen acknowledged that his claim against Amory HMA was based on vicarious liability and that he had no independent claim against the hospital.

judgment on November 18, 2014. Bowen responded that there were disputed issues of fact concerning whether Dr. Murphree obtained informed consent from Bowen, claiming that he "would not have agreed to both the interscalene block and general anesthesia had he been informed of the risks and feasible alternatives." Bowen supplemented his response with Dr. Murphree's answer to the Plaintiffs' interrogatories, specifically noting answers concerning informed consent. In their reply, the Defendants asserted that Dr. Murphree's interrogatory responses were not sufficient to defeat summary judgment, again noting Bowen's failure to provide expert medical testimony to support his claim.

¶4.     After a hearing, the trial court granted the Defendants' motion for summary judgment on January 20, 2015. Finding no error, we affirm.

## STANDARD OF REVIEW

¶5.     We apply a de novo standard of review to a trial court's grant of summary judgment. *Vick v. Brandon HMA LLC*, 167 So. 3d 259, 261 (¶10) (Miss. Ct. App. 2015) (citing *Morton v. City of Shelby*, 984 So. 2d 323, 329 (¶10) (Miss. Ct. App. 2007)). A trial court's consideration of a motion for summary judgment involves "view[ing] all evidence in a light most favorable to the non-moving party, [and o]nly when the moving party has met its burden by demonstrating that there are no genuine issues of material fact in existence should summary judgment be granted." *Id*.

## DISCUSSION

¶6.     The issue presented on appeal is whether Dr. Murphree breached a duty to Bowen by

3

failing to obtain informed consent prior to administering the interscalene block. In *Reikes v. Martin*, 471 So. 2d 385, 392 (Miss. 1985), the Mississippi Supreme Court adopted the objective standard used by the "vast majority of the states" to determine whether a plaintiff may recover under the doctrine of informed consent, holding that "the question [is] whether or not a reasonably prudent patient, fully advised of the material known risks, would have consented to the suggested treatment." Accordingly, "a physician is required to 'disclose those known risks which would be material to a prudent patient in determining whether or not to undergo the suggested treatment.'" *Jamison v. Kilgore*, 903 So. 2d 45, 50 (¶16) (Miss. 2005). "Thus, where a plaintiff charges that a doctor performed a procedure without first obtaining informed consent, the plaintiff's first task is to establish what are known risks of the procedure. *This requires an expert opinion*." *Id*. at (¶17) (emphasis added); *see also Whittington v. Mason*, 905 So. 2d 1261, 1266 (¶25) (Miss. 2005) ("[E]xpert testimony is required to assist the finder of fact in determining whether a particular risk is material, requiring disclosure to the patient prior to a medical procedure.").

¶7.     Bowen's treating orthopedic surgeon, Dr. John Turba, provided deposition testimony that, "based on reasonable medical certainty," the cause of Bowen's medical issues was the interscalene block. However, he further testified that the use of an interscalene block was the standard of care and, unless there was some contraindication, his patients having shoulder surgery would almost always receive an interscalene block. Furthermore, Bowen never designated Dr. Turba as an expert. The supreme court has held:

A treating physician must be designated as an expert if the treating physician goes beyond historical facts personally observed and evaluates the evidence in an attempt to explain it to the jury. Therefore, our precedent forbids treating physicians not designated as experts from testifying to standards of care, causation, or using their expertise to explain the significance of a diagnosis or answer hypothetical questions.

*Chaupette v. State*, 136 So. 3d 1041, 1052 (¶28) (Miss. 2014) (internal citations and quotations omitted). As noted at the motion hearing by counsel for Amory HMA, Dr. Turba "never claimed to be competent to provide an opinion as to the standard of care for an anesthesiologist."

¶8. Bowen argues that Dr. Murphree's responses to his interrogatories "provide[d] the applicable standard of care regarding informed consent."

> INTERROGATORY NO. 2: Provide, in detail, all information you were required to provide to Jerry Bowen to obtain his "informed consent" prior to the December 6, 2007 rotator cuff surgery at Gilmore Memorial Regional Medical Center in Amory, Mississippi.
>
> RESPONSE: Objection is made to this Interrogatory to the extent it requests expert opinions. Expert opinion testimony will be identified pursuant to Rule 26(b) of the Mississippi Rules of Civil Procedure. *Without waiving any objection*, I was required to describe my portion of the procedure and disclose material known risks. The information I provide to patients, including Mr. Bowen, prior to administering an interscalene block [is] described in Interrogatory No. 3. *Such disclosure does comply with the applicable standard of care*.
>
> INTERROGATORY NO. 3: Provide, in detail, the information you allege you provided, whether in writing or verbally, to Jerry Bowen prior to the December 6, 2007 rotator cuff surgery at Gilmore Memorial Regional Medical Center in Amory, Mississippi.
>
> RESPONSE: The written portion of the disclosure is the Consent for Anesthesia Services that was signed by Mr. Bowen. The verbal portion of

5

informed consent that I perform with regard to an interscalene block includes explaining its purpose, which is discussed in detail in my deposition. A patient of mine undergoing such a block would be informed that the block helps alleviate pain within the first eighteen to twenty-four hours of the postoperative period. The block also helps control[] the blood pressure when the surgeon operates; an increase in blood pressure can cause bleeding into the shoulder joint and obscure the surgeon's view. Employing an interscalene block allows us to use less general anesthesia, which has its own risks that I explained. An alternative would be to use only general.

The risks of an interscalene block that I disclose include:

1.    The accidental injection of medication into a blood vessel could result in a seizure or cardiac toxicity;

2.    Temporary side effects including hoarseness, bloodshot eyes, and drooping of the eyelid on the side of the block;

3.    The block usually has a temporary effect on the diaphragm; rarely, this can result in shortness of breath;

4.    Parasthesias (numbness, tingling or burning) for up to several weeks;

5.    Pneumothorax from puncture of the lungs;

6.    Spinal or epidural injection of the local anesthetic with resulting temporary paralysis and low blood pressure; and

7.    1 in 5,000 to 10,000 chance of permanent nerve damage.

(Emphasis added).

¶9.    Bowen denies that Dr. Murphree told him about the chance of permanent nerve damage, thereby, in his view, creating a genuine issue of material fact. The Appellees note, however, that Dr. Murphree's response "does not attempt to articulate the known risks of interscalene block or to delineate which of the known risks Dr. Murphree believes to be

6

material." He merely identified the disclosures he makes and confirmed that those disclosures comply with the applicable standard of care. He did not indicate that each and every item was required to be disclosed.

¶10. Our supreme court has held:

> [N]o doctor could comply with a requirement to disclose every possible risk to every procedure. Therefore, the physician must disclose only material known risks. A known risk is one which would be known to a careful, skillful, diligent and prudent practitioner or specialist. Once the known risks are enumerated, they can then be evaluated as to which are material. The physician may not be required to inform the patient of unexpected or immaterial risks. Among the many factors which could weigh on the question of materiality are frequency of occurrence, potential severity or danger associated with the risk, and the cost and availability of an alternative procedure. *These factors cannot be established absent expert testimony*. If a known risk is found to be material, and was not disclosed to the patient, then the question of causation must be addressed.

*Dunn v. Yager*, 58 So. 3d 1171, 1200-01 (¶73) (Miss. 2011) (internal citations and quotations omitted) (emphasis added); *see also Johnson v. Burns-Tutor*, 925 So. 2d 155, 159 (¶21) (Miss. Ct. App. 2006) (concluding that "without the testimony of a medical expert, neither this Court nor a jury c[ould] understand what information [the physician] should have disclosed to [the patient] before she consented to the procedure" (citing *Whittington,* 905 So. 2d at 1266 (¶24))). Accordingly, without expert testimony to establish that the risk of the type of injury suffered by Bowen was a "material known risk," and one for which a "reasonably prudent patient" would have withheld consent upon being adequately informed, Bowen failed to provide sufficient evidence to withstand summary judgment. *See Jamison*, 905 So. 2d at 613 (¶12) ("By refusing to offer an expert witness to support [a] claim for lack

7

of informed consent, [the plaintiff] offered no genuine issues of material fact for the trial court's determination."). We agree with the trial court that Dr. Murphree's interrogatory responses do not supply the missing expert testimony.

¶11. **THE JUDGMENT OF THE CIRCUIT COURT OF MONROE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, CARLTON, FAIR, WILSON AND GREENLEE, JJ., CONCUR. JAMES, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION.**