GREENLEE, J.,
FOR THE COURT:
¶ 1. This is an appeal from the Rankin County Circuit Court’s grant of summary judgment in favor of Dr. Randall Hines (Hines), Reproductive Medicine PLLC (RM), and Dr. Paul Seago (Seago), on the basis that Hines, RM, and Seago had Lacy Dodd’s (Lacy) consent to remove both of her ovaries. The circuit court’s grant of summary judgment was based on a document signed by Lacy authorizing the removal of ovarian cyst(s), possible .removal of one fallopian tube, and. other procedures considered “necessary or emergent” to the .medical staff. We reverse and remand for further proceedings consistent with this opinion.
PROCEDURAL NOTE
¶ 2. On May 17, 2013, Lacy and Charles Dodd (Charles), Lacy’s husband, filed a complaint in Rankin County Circuit Court. Shortly after, the defendants filed an answer and quickly moved for summary judgment before discovery was conducted. Numerous exhibits were submitted in support in the form of affidavits, medical records, lab results, and more. Our discussion is limited to the filings before the circuit court filed in support or response to the motion for summary judgment.
FACTUAL BACKGROUND
¶3. In 2011 Lacy was concerned over fertility issues. She consulted Hines, an obstetrician and gynecologist specializing in infertility.[1] On March 25, 2011, in order to increase her chances of conception, Lacy authorized Hines to remove an ovarian cyst or cysts (ovarian cystectomy) and possibly remove one of her fallopian tubes (salpingectomy). Prior to the procedure, Lacy signed a document that provided in part:
I further consent and authorize the performance of such additional surgeries and procedures (whether or not arising from presently unforeseen .conditions) considered necessary or emergent in the judgment of my doctor or those of the hospital’s medical staff who serve me.
¶4. Hines’s affidavit states that, after commencing surgery, he observed that *126 both of Lacy’s ovaries lacked any normal1 tissue and appeared clinically cancerous. Hines stated that he consulted intraopera-tiv'ely with Seago, an obstetrician and gynecologist specializing in gynecological cancers. Both doctors’ affidavits stated that they agreed that “the ovaries were clearly not going to be sufficient to allow any reasonable possibility of [Lacy] having her own genetic ehildren[.]” Hines and Seago agreed that it was “medically necessary” and in the “best interests” of Lacy’s “long-term health” to remove both ovaries by conducting a bilateral salpingo-oopho-rectomy.[2], [3], [4]
¶ 5. A biopsy of Lacy’s ovaries conducted shortly after their removal reported that Lacy’s ovaries were found not to be cancerous. They tested positive for noncancerous, serous cystadenofibroma.[5] Hines asserted that he had the report forwarded to a doctor at the Mayo Clinic the same day and that doctor later concurred with the findings. Lacy asserts that even if her ovaries were cancerous, she would have wanted to explore any and all methods to preserve her ability to conceive her own genetic children.
¶ 6. Following the removal of her ovaries, Lacy began hormone replacement therapy (HRT), but was forced to stop treatment due to various blood clots as well as deep vein thrombosis.[6] No longer able to receive HRT, Lacy went into early menopause at approximately thirty years of age. Lacy is unable to conceive her own genetic children.
PROCEDURAL HISTORY
¶ 7. On May 17, 2013, Charles and Lacy filed a pro se complaint against Hines, RM, and Seago in Rankin County Circuit Court asserting that the defendants were negligent in: (1) failing to obtain informed consent to remove Lacy’s ovaries; (2) removing Lacy’s ovaries; (3) failing to conduct a biopsy of Lacy’s ovaries prior to removal; (4) misdiagnosing Lacy’s condition; and (5) “other.” Hines and RM—later joined by Seago—filed a motion for summary judgment. Charles and Lacy subsequently obtained counsel.
¶8. On May 22, 2014, the parties entered an agreed order, signed by the circuit court, which stated all outstanding motions “save for the causation part” of the motion for summary judgment would be heard before the court. This included Lacy and Charles’s Mississippi Rule of Civil Procedure 56(f) motion, which requested more time to conduct discovery. On October 1, 2014, the circuit court ordered the motion for summary judgment be held in abeyance “except regarding the consent issue.” The circuit court also instructed Hines, RM, and Seago “to file either a supplement to the motion [for summary judgment] or a separate motion for summary judgment specifically addressing the consent issue[.]”
*127 ¶ 9. Pursuant to the circuit court’s order; Hines and RM—-joined by Seago—filed a supplemental motion, addressing the consent issue—including causation. The parties entered an agreed order granting Charles and Lacy an extension of time to respond. Charles and Lacy, “out of an abundance' of caution,” responded to all arguments raised in the supplemental motion—including causation.
¶ 10. On February 6, 2015, the circuit court granted summary judgment in favor of Hines, RM, and Seago. The circuit court noted that its ruling was not based on Charles and Lacy’s failure to come forward with expert testimony. Rather, the circuit court based its decision on the fact that the document Lacy signed “specifically included a provision which allowed the doctors to perform any procedure in their judgment necessary that arose during surgery.” The circuit court concluded that its judgment on the consent issue was disposi-tive of all claims raised in Charles and Lacy’s complaint. Thus, no other issue was addressed by the circuit court. On February 23, 2015, Charles and Lacy appealed the circuit court’s grant of summary judgment to this Court.
DISCUSSION
¶ 11. The grant of a motion for summary judgment.is reviewed de novo. Karpinsky v. Am. Nat’l Ins., 109 So.3d 84, 88 (¶ 9) (Miss.2013). The issue before us is whether Lacy provided appropriate consent for the removal of her ovaries, eliminating her ability to conceive.
I. Consent
¶ 12. Two different analyses of consent exist: a consent analysis based on assault and battery, and an informed-consent analysis based on medical negligence.
A. Battery-Based Consent Analysis
¶ 13. Mississippi recognizes the re- ‘ quirement that consent be given for medical procedures. As-early as 1914, courts have addressed consent based on the law of assault and battery as described by Justice Cardozo in Schloendorff v. Society of New York Hospital, 211 N.Y. 125, 105 N.E. 92, 93 (1914) (abrogated on other grounds). As cited in Fox v. Smith, 594 So.2d 596, 604 (Miss.1992): “Every human being of adult years and sound mind has a right to determine what shall .be done with his [or her] own body, and a surgeon who performs an operation without his [or her] patient’s consent commits an assault [and battery] for which he [or she] is hable for damages.” Id. (quoting Schloendorff, 105 N.E. at 93) (further citation omitted).
B. Medical-Negligence-Based Consent Analysis
¶ 14. Mississippi also recognizes an informed-consent analysis based around a theory of medical negligence, which is analyzed under the critical question of “whether or not a reasonably prudent patient, fully advised of the material known risks, would have consented to .the suggested treatment.” Jamison v. Kilgore, 903 So.2d 45, 48-49 (¶ 10) (Miss.2005) (quoting Reikes v. Martin, 471 So.2d 385, 392 (Miss.1985)). “[W]hére a plaintiff charges that a doctor performed a procedure without first obtaining informed consent, the plaintiffs first task is to establish what are known risks of the procedure. This requires an expert opinion.” Id. at 50 (¶ 17).[7] It is not until after the known risks are enumerated that they can be evaluated as to which are material. Id. at (¶ 16).
*128 C. When to Apply Which Analysis
¶ 15. Mississippi has' not directly addressed when it is appropriate to apply the battery-based analysis or the medical-negligence-based - analysis. However, other jurisdictions have. The Rhode Island Superior Court in Spaight v. Shah-Hosseini, No. C.A. PC 04-6802 (R.I. Super. Ct. Dec. 30, 2009), addressed the application of these two analyses.
¶1'6. In Spaight, the patient consented to a laparoscopic pelviscopy[8] to remove a suspected endometriosis,[9] but the procedure instead resulted in the unanticipated removal of her ovary and fallopian tube, as well as other complications. The Spaight court noted that á “majo'rity of jurisdictions have characterized a failure to disclose ' material risks and alternatives to treatment as a negligence action, while permitting the application of battery law to remain in the more limited category of cases where the,procedure was unauthorized.” Id. (emphasis added). They noted that there are some instances where applying the medical-negligence-based analysis as opposed to battery-based analysis would be “illogical.” Id: One such instance is when a procedure is performed that was not considered beforehand, as it would make no logical sense to require the plaintiff to prove the doctor had a duty to disclose a material or known risk of an uncontemplated procedure. Id.
¶ 17. The Louisiana Supreme Court has also found the application of the battery-based analysis to be appropriate when a procedure completely lacked consent. Pizzalotto v. Wilson, 437 So.2d 859, 862-64 (La.1983).[10] In Pizzalotto, the patient consented to a laparoscopy.[11] Id. at 862. Upon observing the patient’s reproductive organs, the doctor believed they were too damaged and performed a hysterectomy,[12] claiming “failure to .remove the reproducr tive organs would result in pain and infec-tipn.” Id. The court applied the battery-based analysis because the removal of the patient’s ovary and other reproductive organs could not logically be considered a “risk” of the laparoscopic procedure that was disclosed. Id. at 863.
II. Lack of Expert Testimony
¶ 18. As stated above, a medical-negligence-based complaint requires expert testimony to establish the known or material risks associated with a procedure. Jamison, 903 So.2d at 49 (¶¶ 15-17). Here, no expert testimony was submitted. Hines’s and Seago’s affidavits were taken by the court only as lay descriptions of what happened, not expert testimony. Even if their affidavits were taken as expert testimony, they do not state whether removal of Lacy’s ovaries was a known or material risk of the procedure. Further, there is no indication from the record that Lacy was told that loss' of her ovaries was a risk of the procedure, nor do the parties dispute that she was not told that loss of her ovaries was a risk. Thus, without ex *129 pert testimony, the battery-based analysis is the only analysis under which this complaint could have been examined, unless the written authorization signed by Lacy would control.
¶ 19. Judge Carlton’s dissent highlights the status of the law using what we describe as the medical-negligence-based analysis of consent.[13] Our opinion does not arrive at the application of that analysis. Judge Carlton’s position that the trial court should be affirmed due to the lack of expert testimony is not properly before the Court. The circuit court explicitly stated in its order granting summary judgment that its decision was not based on the absence of expert affidavits from Lacy, nor did it consider the affidavits of Hines or Seago as expert testimony. By its October 1, 2014 order, the circuit court narrowed the issue for its consideration, which is before us, to consent. It held in abeyance all issues raised in Hines’s, .RM’s, and Seago’s motion for summary judgment, Lacy’s motion to file an amended answer, .and Lacy’s motion for additional time to respond under Rule 56(f), which included Lacy’s request for more time to conduct discovery. The circuit court’s instructions and ruling were based solely on the consent form signed by Lacy provided by Hines and RM.
¶ 20. The circuit court was appropriate in so limiting its review, as discovery had not yet even begun. Lacy had not be.en able, through discovery, to ascertain if Hines, RM, or Seago considered removal of Lacy’s ovary(ies) a known or-material risk of the procedure.[14] If they did, there is no indication in the record before the Court that Lacy was advised of such. It is not controverted that Lacy did not give express consent or give permission for her ovaries to be removed. The analysis based on her lack of consent' under the longstanding battery theory of consent controls at this early stage of the proceeding below ■ where no expert testimony was going to be and none was considered by the circuit judge. Judge Carlton’s use of the medical-negiigence consent analysis is premature given the early' stage of thé litigation at which the trial court made the decisión before us.
¶21. Judge Wilson’s dissent relies on the doctors’ affidavit statements to deter* • mine that the signed' consent form was sufficient. The form limits consent to medical procedures that would be necessary or emergent. Determination of whether the procedure would be, necessary or emergent should. require expert testimony. As the circuit court considered nothing before it as expert testimony, on appeal Judge Wilson’s analysis is premature,
III. Waiver Form
 ¶ 22. Though waivers’ executed by a patient “can be helpful,” they are not necessarily dispositive of a patient’s consent. Barner v. Gorman, 605 So.2d 805, 808 *130 (Miss.1992).[15] “A simple waiver form with boilerplate language applicable to any surgical procedure may not be adequate.” Id. “[Disclosure to a patient should be specific to that patient’s treatment.” Id. Barrier is factually instructive as well on the case before us. In Barrier, the doctor suggested that consent to the procedure involved in that case was evidenced by:a consent form signed by the patient authorizing “other medical services.” The Barrier court did agree that the form was evidence of the patient’s consent, but noted that it was not conclusive evidence of the patient’s consent. Similar language was at issue in Spaight and Pizzalotto. In those cases, as in. Banner, the language was rejected as not indicative of consent for the procedure at issue before the respective courts.
¶ 23. Here, the section of the form at issue authorized “necessary or emergent” medical procedures. Though this does go toward evidence of Lacy’s consent to the procedures done, we cannot say that it is conclusive of consent to the removal of her ovaries or to what the known or material risks were of her surgery. Nowhere in the, record is there any indication that Lacy was told that the removal of her ovaries was a risk. Neither Lacy nor the defendants assert that she was informed that removal of her ovaries was a possible risk of the procedure. Thus, we find that the document signed by Lacy is not presently dispositive of whether or not she gave consent to the removal of her ovaries. We do not decide whether the document should be construed against the writer based on its alleged imperfection or whether Lacy could have been deemed to have made an informed decision under the medical-negligence-based analysis after expert testimony and other evidence.
IY. Application of Law
¶24. In the case at hand, Lacy sought Hines’s services for the purpose of increasing her ability to bear her own children, and agreed to the removal of ovarian cysts and one fallopian tube in pursuit of that goal. Instead of removing any cysts or the fallopian tube, Hines removed both ovaries, which was á “substantially different” procedure than that to which she consented. See Samoilov v. Raz, 222 N.J.Super. 108, 536 A.2d 275, 280-81 (1987) (The battery analysis is appropriate when the performed procedure was “substantially different” from that to which consent was given.). The removal of her ovaries was a procedure that foreclosed her ability to produce her own eggs for conception, whereas the procedures anticipated and authorized were authorized in order to increase her ability to'bear her own children. Without question, the procedure performed was “substantially different” than that authorized. Further, and similar to the situation in Pizzalotto, the' destroying of Lacy’s ability to naturally conceive by the removal of her ovaries was not logically a perceived risk of the procedure meant to increase her fertility, as it was antithetical to the purpose of the surgery. Clearly, Lacy did not expressly authorize the removal of her ovaries.
¶ 25. In dissent, Judge Wilson characterizes our opinion as a declaration of public policy. However, our decision is merely based upon application of Mississippi law in existence. Marchbanks v. Borum, 806 So.2d 278, 288 (¶ 28) (Miss.Ct.App.2001) (reaffirming that a medical procedure involving a touching requires consent as stated in Fox, 594 So.2d at 604, and established in Phillips ex rel. Phillips v. Hull, *131 516 So.2d 488 (Miss.1987) (overruled on other grounds)).
¶26. The case before the Court is a review of the summary judgment granted below under Mississippi Rule Civil Procedure 56(c). We are not reviewing or making a declaratory judgment. M.R.C.P. 57. Based upon the limited scope of the judgment and limited facts before us, we find that there are genuine issues as to material facts and that the moving parties are not entitled to a judgment as a matter of law.
¶ 27. Thus, we find that, under the battery-based analysis of consent, Lacy did not give express consent for the removal of her ovaries and that the consent form signed by . Lacy did not summarily provide consent to remove her ovaries. As the circuit court’s decision did not reach whether or not the removal of her ovaries became necessary or emergent during the medical procedure that was consented to by Lacy, nor did the judgment address any other analysis of consent pertinent to theories of medical liability, we reverse and remand.
CONCLUSION
¶ 28. We reverse and remand the Rankin County Circuit Court’s grant of summary judgment for further proceedings consistent with this opinion.
¶ 29. THE JUDGMENT OF THE CIRCUIT COURT OF RANKIN COUNTY IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPEL-LEES.
IRVING, P.J., BARNES, ISHEE AND JAMES, JJ., CONCUR. CARLTON, J., DISSENTS WITH SEPARATE WRITTEN OPINION. WILSON, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY ■' GRIFFIS, P.J., AND CARLTON, J. LEE, C. J., AND FAIR, J., NOT PARTICIPATING.

. At the time of Lacy's initial visit, she was twenty-seven years old.

. Hines and Seago’s affidavits stated that they ruled out the possibility of a biopsy to confirm the presence of cancer because they reasoned that a biopsy would not have definitively excluded a diagnosis of cancer and, assuming the ovaries were cancerous, a biopsy could have potentially spread the cancer throughout the pelvis and abdomen.

. A bilateral salpingo-oophorectomy is a procedure in which both ovaries are removed.

. The justification for the removal of Lacy’s ovaries was given in the affidavits of Hines and Seago. Neither Hines’s nor Seago’s affidavit was submitted as or considered as an expert opinion by the circuit court.

. Serous cystadenofibroma is a condition in which a benign tumor appears cancerous.

. Deep vein thrombosis is a condition where a blood clot forms in one or more of the deep veins in the body obstructing the flow of blood through the circulatory system.

. “Such expert testimony may be developed from expert witnesses, admissions by the defendant, or other authoritative sources as allowed by the Mississippi Rules of Evidence.” Jamison, 903 So.2d at 50 n. 2.

. A laparoscopic pelviscopy is a procedure where carbon dioxide is blown into the body ’ cavity to allow for direct visualization of the ovaries, fallopian tubes, and uterus. It is typically done to diagnose and treat pelvic organ disorders, as well as to perform surgical procedures on the same organs.

. Endometriosis is a disorder in which tissue that normally lines the inside of the uterus grows on the outside of the uterus.

.Louisiana later abrogated'this decision by statute as noted in Thibodeaux v. Jurgelsky, 898 So.2d 299, 303-04 (La.2005).

. A laparoscopy is a procedure where a fiber-optic instrument is inserted through the abdominal wall to view organs or to allow for a surgical procedure,

. Removal of all or part of the uterus.

. The cases cited by Judge Carlton rely on the medical-negligence-based analysis of consent, not the- battery-based analysis. See McMichael v. Howell, 919 So.2d 18 (Miss. 2005); Jamison v. Kilgore, 903 So.2d 45 (Miss. 2005); Whittington v. Mason, 905 So.2d 1261 (Miss.2005); Reikes v. Martin, 471 So.2d 385 (Miss. 1985).

. Judge Carlton’s dissent relies on cases in which discovery had proceeded or the case bad gone to trial. In McMichael, the plaintiff provided answers to interrogatories and the circuit court allowed the plaintiff additional time, to depose the defendant and provide expert-witness disclosures. McMichael, 919 So.2d at 20 (¶ 3). In Whittington, a trial had been conducted. Whittington, 905 So.2d at 1263 (¶ 12). In Reikes, a trial had also been conducted. Reikes, 471 So.2d at 385.

. Judge Wilson's dissent criticizes our use of Barrier, a case dealing with informed consent. However, Barrier’s logic concerning written waivers would apply to both battery-based consent analyses and informed-consent analy-ses.